**MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.**

v.

**LAW FIRM OF MALONE MIDDLEMAN, PC, and Candace A. Eazor and Richard Eazor, as Executors of the Estate of Richard A. Eazor**

**Appeal of Law Firm of Malone Middleman, PC, Appellant.**

**Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., Appellant**

v.

**Law Firm of Malone Middleman, P.C. and Candace A. Eazor and Richard Eazor as Executors of the Estate of Richard A. Eazor.**

Superior Court of Pennsylvania.

Argued July 23, 2013.

Filed June 17, 2014.

Reargument Denied Aug. 18, 2014.

by the General Assembly or other authority in forbidding the offense.

18 PA.C.S. § 312

David E. Smith, Wexford, for appellant.

Scott A. Millhouse, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., OTT and MUSMANNO, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

This is a cross-appeal from the judgment entered August 22, 2012, awarding Meyer Darragh $14,721.39 on its *quantum meruit* claim against Malone Middleman. We vacate and remand with instructions.

■ The trial court has set forth the background of this matter as follows:

On October 6, 2002, Richard A. Eazor died in a motor vehicle accident. In March of 2005 attorney William Weiler, Jr. began representing the Eazor Estate in a wrongful death civil lawsuit under a contingent fee agreement. In November of 2005, attorney Weiler signed an employment agreement with Meyer Darragh, containing these provisions:

.... Any and all legal work performed by Weiler will be deemed work on behalf of the Firm.

.... All fees for legal services performed during the term of this Agreement by Weiler or on behalf of any client originated by Weiler shall be the property of the Firm, regardless of whether the fees are received by the Firm during the term of this Agreement or after the expiration or termination of it and regardless of whether Weiler originated the client or matter prior to the effective date of

this Agreement .... the Firm will have the sole right to collect fees due to it and Weiler will cooperate in the Firm's collection efforts. Further, it is agreed that any and all files relating to legal work performed by Weiler or on behalf of clients originated by Weiler shall be the property of the Firm and/or the clients and Weiler shall not remove same from the premises of the Firm, absent written permission from the Firm or written instructions by the client.

Attorney Scott Millhouse of Meyer Darragh assumed primary responsibility for the Eazor wrongful death litigation, and he was assisted by attorney Weiler, another Meyer Darragh attorney and two paralegals. Attorney Millhouse represented the Eazor Estate during two depositions, and he also drafted a three page proposed Settlement Agreement that he circulated to all opposing counsel.

Mr. Weiler resigned from Meyer Darragh in May of 2007, but before doing so, he agreed that Meyer Darragh would receive two-thirds and Mr. Weiler would receive one-third of the attorney fees generated by the Eazor wrongful death lawsuit. Meyer Darragh believed it would continue to act as lead counsel in the Eazor wrongful death litigation after Mr. Weiler's departure from the firm. However, when Mr. Weiler left Meyer Darragh, he removed the Eazor litigation file without obtaining Meyer Darragh's permission. Then, Mr. Weiler affiliated with Malone Middleman and the Eazor Estate decided it would be represented by Mr. Weiler and his new firm, Malone Middleman.

Meyer Darragh promptly notified Malone Middleman that it was bound by attorney Weiler's agreement to pay Meyer Darragh two-thirds of the Eazor Estate attorney fees. Malone Middleman responded by denying that Meyer Darragh was owed two thirds of the Eazor attorney fee and "at best, has a *quantum meruit* claim for actual time expended...." Malone Middleman's contingent fee agreement with the Eazor Estate, which is undated, was not prepared until months after Meyer Darragh notified Malone Middleman of the claim to a portion of the attorney fees. (*See* Proposed Stipulated Facts/Trial Documents, Defendant's Exhibit E, description of Malone Middleman's legal work, p. 4 showing the Contingent Fee Agreement was prepared and sent to J. Richard Eazor on 9/19/2007.) Malone Middleman's contingent fee agreement does not address the payment of Meyer Darragh's attorney fees, and there is nothing in the record to indicate that Malone Middleman advised the Eazor Estate that the Estate could be responsible for paying the attorney fees charged by Meyer Darragh. Ultimately the Eazor Estate settled the litigation shortly before the commencement of trial for $235,000, with Malone Middleman receiving $67,000 in attorney fees from the Estate. The framework of the settlement proposal drafted by attorney Millhouse of Meyer Darragh was first utilized by the Trial Judge in a Court Order that narrowed the issues for trial, and it was also utilized in the ultimate settlement of the litigation.

Meyer Darragh initiated this litigation in September of 2010 naming Malone Middleman and the Eazor Estate Executors as Defendants.[1] The Amended

---

1. We take judicial notice of the fact that Attorney Weiler died in October 2009 in an automobile accident.

Complaint, filed in March of 2011, asserted a claim against Malone Middleman for breach of contract and a claim against both Malone Middleman and the Estate Executors for *quantum meruit.* The parties elected to have the dispute decided by a Judge as a "Case Submitted on Stipulated Facts" under Pennsylvania Rule of Civil Procedure No. 1031. The parties filed Stipulated Facts and Briefs and [the trial court] heard oral argument. In its Briefs and at oral argument, Meyer Darragh stated that it is not seeking a verdict against the Eazor Estate Executors because the Estate paid in full the attorney fee it was charged and owes nothing additional.

Trial court opinion, 11/26/12 at 2–4 (emphasis in original).

The trial court entered a verdict in favor of the Estate Executors and also in favor of Meyer Darragh on the **quantum meruit** claim against Malone Middleman in the amount of $14,721.39. Post-trial motions were denied, and these timely appeals followed. Both appellants complied with Pa. R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Malone Middleman presents the following issue for this court's review: "Whether the trial court erred in entering judgment in favor of [Meyer Darragh] and against Defendant Malone Middleman, P.C. in the amount of $14,721.39 based on a theory of quantum meruit[?]" (Malone Middleman's brief at 4.)

Meyer Darragh presents the following issues on appeal:

(1) Whether the trial court erred in determining that Meyer Darragh did not establish a valid claim for breach of contract against Malone Middleman for the total stipulated amount of $56,808.80 based on the express agreement between Meyer Darragh and William Weiler, Jr., which was binding on Malone Middleman?;

(2) In the alternative, whether the trial court erred in awarding Meyer Darragh $14,721.39 based on a quantum meruit theory?

Meyer Darragh's brief at 4.

We will address the **quantum meruit** issue first.

It is well-settled that "a client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making the performance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit a proper amount for the services he has rendered." *Sundheim v. Beaver County Building & Loan Association,* 140 Pa.Super. 529, 14 A.2d 349 (1940); *Hiscott and Robinson v. King,* 426 Pa.Super. 338, 626 A.2d 1235 (1993). Quantum meruit is an equitable remedy. *Feingold v. Pucello,* 439 Pa.Super. 509, 654 A.2d 1093 (1995), **appeal denied,** 544 Pa. 646, 664 A.2d 975 (1995). It is defined as " 'as much as deserved' and measures compensation under [an] implied contract to pay compensation as reasonable value of services rendered." Black's Law Dictionary, 6th Edition (1997), at 1243. Quantum meruit and "reasonable value of services" are virtually interchangeable phrases. *See Lampl v. Latkanich,* 210 Pa.Super. 83, 231 A.2d 890 (1967) (attorney's complaint which sought compensation for reasonable value of services was sufficient to put defendants on notice that quantum meruit was the basis of the claim).

*Mager v. Bultena,* 797 A.2d 948, 958–959 (Pa.Super.2002) (Joyce, concurring), **appeal denied,** 572 Pa. 725, 814 A.2d 678 (2002).

■ There is no Pennsylvania appellate court case holding that an attorney who initially represents a client and is dismissed can maintain a *quantum meruit* action against the attorney who ultimately settles the case. Rather, the initial attorney has to proceed against the client.

We held, in *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347 (1993), *affirmed*, 535 Pa. 610, 637 A.2d 276 (1994), that an attorney, who initially represented a client and is dismissed, does not have a quantum meruit action against the attorney who ultimately settles the case. *Id.* at 271, 619 A.2d at 352. We also stated that the initial attorney may have had a valid quantum meruit claim against the client as of when the attorney was terminated. *Id.* at 270, 619 A.2d at 351.

*Fowkes v. Shoemaker*, 443 Pa.Super. 343, 661 A.2d 877, 879 (1995), *appeal denied*, 544 Pa. 609, 674 A.2d 1072 (1996). *See also Mager, supra* (predecessor law firm possessed no claim in *quantum meruit* against anyone other than their former client).

In *Fowkes*, for example, George Fowkes and Leonard Price represented Kevin and Janice Zeigler in a personal injury action. *Fowkes*, 661 A.2d at 878. The Zeiglers eventually became dissatisfied with their representation and terminated the attorney-client relationship, instead retaining Edward Shoemaker as counsel. *Id.* at 878–879. Shoemaker eventually settled the case for $4,284,000, out of which his attorney's fee was paid. Subsequently, Fowkes and Price filed suit against Shoemaker, claiming that they were entitled to a *quantum meruit* recovery for services they had rendered to the Zeiglers. *Id.* at 879. Shoemaker filed a motion for judgment on the pleadings, maintaining that any right of recovery was against the Zeiglers, not against him. *Id.* The trial court agreed and granted the motion. *Id.*

On appeal, this court affirmed, holding that Fowkes and Price did not have a valid *quantum meruit* claim against Shoemaker for services rendered to the Zeiglers; rather, relying on *Styer, supra,* we determined that Fowkes and Price's *quantum meruit* action properly lay against the Zeiglers, not Shoemaker. *Id.* Meyer Darragh attempts to distinguish *Fowkes* on the basis that Shoemaker reduced his fee from 40% to 33⅓% "to offset other fees Mr. and Mrs. Kevin Zeigler may owe other attorneys they previously retained," *i.e.,* Fowkes and Price. *Id.* However, this fact does not alter *Fowkes'* central holding that a *quantum meruit* action lies against the former client, not the successor attorney.

Meyer Darragh also relies on *Johnson v. Stein*, 254 Pa.Super. 41, 385 A.2d 514, 517 (1978), for the proposition that it is entitled to an equitable remedy such as *quantum meruit*. However, this discussion in *Johnson* has been recognized as dicta. *Styer*, 619 A.2d at 350–351 ("The *Johnson* court's gratuitous speculation as to whether appellant might be able to pursue such a theory at a later time is pure dicta.").

We acknowledge that in *Feingold v. Pucello*, 439 Pa.Super. 509, 654 A.2d 1093 (1995), *appeal denied*, 544 Pa. 646, 664 A.2d 975 (1995), this court affirmed the trial court's rejection of an attorney's *quantum meruit* claim against his former client. The *Feingold* court opined that if, as he alleged, Feingold's services facilitated settlement, his claim would more properly lie against the settling attorney. *Id.* at 1095. The client did not receive any tangible benefit. *Id.* However, this statement in *Feingold* was based on the dicta in *Johnson, supra.* *Id.* Furthermore, the statement in *Feingold* was itself dicta, where Feingold never proceeded against the subsequent attorney and the basis for affirmance was that Feingold had unclean

hands, having failed to comply with the ethical rules. *Id.* at 1094–1095. Therefore, neither *Johnson* nor *Feingold* is binding authority in this case. Until our supreme court holds otherwise, we will not recognize a claim for **quantum meruit** by a former attorney against a subsequent attorney. The trial court erred in awarding Meyer Darragh $14,721.39 against Malone Middleman based on a theory of **quantum meruit.**

We now turn to Meyer Darragh's claim for breach of contract. We conclude that Attorney Weiler's agreement to pay Meyer Darragh two-thirds of the Eazor Estate attorney fee was enforceable as to Malone Middleman. Although Malone Middleman was not a party to the contract, its share of the attorney fee was limited by the terms of the existing agreement Attorney Weiler had with Meyer Darragh.

In *Ruby v. Abington Memorial Hospital,* 50 A.3d 128 (Pa.Super.2012), **appeal denied,** 620 Pa. 710, 68 A.3d 909 (2013), Keith Erbstein, Esq., was a partner at the Beasley Firm, a Philadelphia-based personal injury law firm. Erbstein signed an employment agreement in which he agreed to reimburse the firm 75% of any fees recovered should he leave the firm for any reason. *Id.* at 130. In October 2004, Erbstein brought the Ruby negligence case into the Beasley Firm. *Id.* The plaintiffs in the Ruby matter signed a contingency fee agreement with the firm and Erbstein. *Id.* at 130–131.

Subsequently, Erbstein left the Beasley Firm effective January 26, 2006, and obtained employment with the law firm of Young, Ricchiuti, Caldwell & Heller, LLC ("Young"). The Rubys elected to follow Erbstein to the Young law firm and signed

an almost identical contingency fee agreement with Young. *Id.* at 131. Erbstein maintained control of the file until the summer of 2008, when he became seriously ill; after that time, other members of the Young law firm handled the case and it ultimately settled in January 2011. *Id.*

Subsequently, a dispute arose between the Beasley Firm and Young regarding distribution of the attorneys' fees, and the trial court awarded 25% to Young and 75% to the Beasley Firm pursuant to the contract Erbstein signed while working at the Beasley Firm. *Id.* In affirming the trial court despite the fact that Young was not a party to the employment agreement between the Beasley Firm and Erbstein, this court relied on the fact that Erbstein was a partner of the Beasley Firm when he left in 2006 and the Ruby case constituted "unfinished business" as defined by the Uniform Partnership Act ("UPA"), 15 Pa. C.S.A. §§ 8301–8365:

> [W]e must look to the circumstances at the time Erbstein left Beasley to determine whether the Rubys' case constituted unfinished business. As there is no dispute that the Rubys' case was in the midst of litigation at the time of Erbstein's departure, there can be no doubt that it indeed constituted unfinished business. Consequently, Erbstein, and in turn [Young], cannot cut off the rights of the other partners in the dissolved partnership by the tactic of entering into a 'new' contract to complete such business.

*Id.* at 135 (citations and quotation marks omitted).

██ Instantly, Attorney Weiler was not a partner of Meyer Darragh.[2] As such,

---

**2.** *Ruby* also found that Young could not sue for **quantum meruit** where there was a written contract, *i.e.,* the employment agreements between Beasley and Erbstein. *Id.* at 136.

"In Pennsylvania, the quasi-contractual doctrine of unjust enrichment (*quantum meruit* ) does not apply when a written agreement or

the Eazor Estate cannot be considered "unfinished business" within the meaning of the UPA when Attorney Weiler left Meyer Darragh. Nevertheless, Meyer Darragh was still entitled to two-thirds of the fees in accordance with the employment contract. The *Ruby* court found that while Young was not a party to the contracts establishing the Beasley Firm's claim and was not legally bound thereby, Young could only take its share of the fees subject to the terms of the employment contracts. To hold otherwise would "ignore the reality of the circumstances giving rise to Beasley's claim." *Id.* at 132. Similarly, here, while Malone Middleman protests that it cannot be bound by a contract to which it is not a party, "The question is not whether [Young] is **bound** by the employment agreement, but whether, and to what degree, may [Young] take a share of the attorneys' fees subject to the employment agreement." *Id.* (emphasis in original). The *Ruby* court concluded that while Young was not "bound by" the contract between Erbstein and the Beasley Firm, "it may only take its share of attorneys' fees subject to the terms of the employment agreement." *Id.* at 135. We also distinguished *Mager, supra,* on the basis that in *Mager,* the attorney did not have a contract with his prior firm providing for fees to be paid in the event that the firm was discharged prior to a resolution of the case. *Id.* at 136.

In the instant case, as in *Ruby, **quantum meruit*** does not apply where there is a written agreement, *i.e.,* the employment contract between Attorney Weiler and Meyer Darragh. Malone Middleman may only take its share of the attorneys' fees subject to the terms of the employment agreement. Meyer Darragh and Attorney Millhouse did most of the work on the Eazor Estate file and Malone Middleman was promptly notified, before it signed a contingency fee agreement with the Estate, of Meyer Darragh's claim to two-thirds of any fees generated by the Eazor Estate litigation.

 Therefore, we find that Meyer Darragh is entitled to two-thirds of the Eazor Estate contingent fee based on its employment agreement with Attorney Weiler. For these reasons, we are compelled to vacate and remand.[3]

Judgment vacated. Remanded with instructions to enter judgment in favor of Meyer Darragh in an amount equal to two-thirds of the contingent fee. Jurisdiction relinquished.

---

express contract exists between the parties." *Id.* (citations omitted).

3. Meyer Darragh claims it is entitled to $56,808.80, or two-thirds of the attorney fee under the contingent fee agreement between Malone Middleman and the Eazor Estate. Malone Middleman's contingent fee agreement provided for a 33⅓ fee of the net proceeds of settlement. One-third of the overall settlement of $235,000 would equate to $78,333.33. However, apparently the Eazor Estate only paid a total of $67,000 in fees, a

fee of $55,000 to Malone Middleman and a referral fee of $12,000 to Attorney Weiler. (Malone Middleman's brief at 20.) The trial court used the lower, actual attorney fee of $67,000 that was paid. (Trial court opinion, 11/26/12 at 11 n. 3.) According to the trial court's calculations, Meyer Darragh would only receive $48,887.81 ($44,666.67 plus costs of $4,221.14). *Id.* We are not a fact-finding court, and we will remand for the trial court to make this determination.