SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.
*1095 OPINION
JUSTICE DOUGHERTY
This is the sequel to our decision in Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C. 635 Pa. 427, 137 A.3d 1247 (2016). We previously held predecessor counsel-Meyer, Darragh, Buckler, Bebenek & Eck (Meyer Darragh)-was not entitled to breach of contract damages against successor counsel-the Law Firm of Malone Middleman, P.C. (Malone Middleman), where a contract regarding counsel fees did not exist between the two firms. Id. at 1258. Subsequently, we granted discretionary review nunc pro tunc to determine whether Meyer Darragh is entitled to damages in quantum meruit against Malone Middleman, where the trial court initially held such damages are recoverable, but the Superior Court reversed. For the reasons set forth below, we reverse the Superior Court and remand to the trial court for reinstatement of its award of damages in quantum meruit to Meyer Darragh against Malone Middleman.
This matter arose from a wrongful death lawsuit filed by the Estate of Richard A. Eazor (the Eazor Estate) deriving from a motor vehicle accident (the Eazor Litigation). The Eazor Estate was represented by Attorney William Weiler, Jr., who entered his appearance in the matter on March 24, 2005. See Proposed Stipulated Facts at ¶ 6. On December 1, 2005, Attorney Weiler became associated with Meyer Darragh. Attorney Weiler brought the Eazor Litigation with him and Meyer Darragh attorneys worked on the Eazor Litigation for a total of 71.25 hours over a nineteen-month period. See id. at ¶¶ 4, 39, 40 & Exhibit D to Proposed Stipulated Facts. In May 2007, Attorney Weiler resigned from Meyer Darragh. At the time of Attorney Weiler's resignation, Meyer Darragh understood it would continue as lead counsel in the Eazor Litigation along with Attorney Weiler at his new firm. Written correspondence at the time of Attorney Weiler's separation from Meyer Darragh indicated that Meyer Darragh would receive two-thirds of the attorneys' fees arising out of the Eazor Litigation, and Attorney Weiler would retain one-third of the fees. See Proposed Stipulated Facts at ¶ 18 and Exhibit 7 to Proposed Stipulated Facts.
Upon departing from Meyer Darragh, Attorney Weiler became affiliated with Malone Middleman. See Proposed Stipulated Facts at ¶ 22. In correspondence dated June 18, 2007, the Eazor Estate informed Meyer Darragh that it was moving its file to Malone Middleman and discharging Meyer Darragh as counsel. See Exhibit 14 to Proposed Stipulated Facts. Upon being retained by the Eazor Estate, Malone Middleman entered into a contingency fee agreement with the Estate, noting representation *1096 would be provided in exchange for 33.3% of the net proceeds of settlement if the matter settled before suit was filed, and 40% of the net proceeds of settlement recovered if settlement occurred after the filing of suit. See Exhibit C to the Proposed Stipulated Facts. Thereafter, Meyer Darragh notified Malone Middleman that pursuant to its agreement with Attorney Weiler, it was entitled to two-thirds of the contingent fee earned from the Eazor Litigation. In response, Malone Middleman denied Meyer Darragh was entitled to two-thirds of any contingent fee, and "at best, ha[d] a quantum meruit claim for actual time expended." See Exhibit 18 to Proposed Stipulated Facts. Malone Middleman eventually settled the Eazor Litigation for $235,000, and received $67,000 in attorneys' fees, which it apparently accepted as payment in full. See Proposed Stipulated Facts at ¶ 45.[1]
Meyer Darragh demanded from Malone Middleman two-thirds of the counsel fees generated by the settlement of the Eazor Litigation pursuant to its agreement with Attorney Weiler or, in the alternative, payment based on quantum meruit in the amount of $17,673.93 for the work it performed and costs it incurred. See Proposed Stipulated Facts at ¶ 51. Malone Middleman did not pay any portion of the fees it collected to Meyer Darragh.
In September 2010, Meyer Darragh filed suit for breach of contract against Malone Middleman and for damages in quantum meruit against Malone Middleman and the Eazor Estate.[2] See Amended Complaint. After a bench trial on stipulated facts, the trial court entered a verdict in the amount of $14,721.39 in favor of Meyer Darragh on its quantum meruit claim. The court denied relief on the breach of contract claim.
Both Meyer Darragh and Malone Middleman filed post-trial motions, which were denied, and both parties appealed to the Superior Court. In its Pa.R.A.P. 1925(a) opinion, the trial court first addressed Meyer Darragh's quantum meruit claim, noting Pennsylvania's jurisprudence regarding predecessor counsel's entitlement to a portion of a recovered contingent fee under a theory of quantum meruit against successor counsel, while inconsistent, does not prohibit such relief. See Trial Ct. slip. op. at 5. The court opined Meyer Darragh's work in the Eazor Litigation conferred benefits to Malone Middleman, and those benefits materialized into a settlement and receipt of a contingent fee of $67,000. See id. at 10. The court further noted cases where quantum meruit damages were denied involved contracts regarding the payment of fees to all counsel, and the terms of those contracts controlled in those disputes. See id. at 10-11, citing Ruby v. Abington Mem. Hosp. , 50 A.3d 128 (Pa. 2012) (agreement by partner of predecessor counsel's firm who later joined *1097 successor counsel's firm was enforceable to provide share of contingent fee to predecessor firm because underlying litigation was "unfinished business" of partners of predecessor firm); Mager v. Bultena , 797 A.2d 948, 954 & n.9 (Pa. Super. 2002) (agreement between client and successor counsel that client would indemnify successor counsel against any claim by predecessor counsel for share of contingent fee was enforceable and precluded quantum meruit claim against successor counsel); Fowkes v. Shoemaker , 443 Pa.Super. 343, 661 A.2d 877 (1995) (existence of contingent fee agreement between successor counsel and clients requiring clients to be responsible for attorney fee owed to predecessor counsel precluded quantum meruit claim against successor counsel). The court reasoned Meyer Darragh could succeed under a claim of quantum meruit only if the employment agreement between Attorney Weiler and Meyer Darragh was unenforceable against Malone Middleman. The court concluded Malone Middleman was not bound by the Weiler/Meyer Darragh agreement, and held Meyer Darragh was entitled to its share of fees on a theory of quantum meruit instead. See id. at 11. The court rejected Meyer Darragh's claim the amount of damages should be increased to $17,673.93, holding its $14,721.39 verdict was the correct reflection of the itemized bill submitted by Meyer Darragh excluding charges related to the fee dispute. See id. at 14.
The Superior Court first addressed Malone Middleman's challenge to the quantum meruit award, reversed the trial court's ruling on the issue, and held a predecessor law firm or attorney who is dismissed as counsel cannot maintain a claim in quantum meruit against a successor law firm who ultimately settles the case. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C. , 95 A.3d 893, 897 (Pa. Super. 2014)( Meyer Darragh I ). The Superior Court further noted any such quantum meruit claim lies against the client, not predecessor counsel. Id. at 897-98, quoting Fowkes , 661 A.2d at 879 (citing Styer v. Hugo , 422 Pa.Super. 262, 619 A.2d 347 (1993), for proposition initial attorney may have quantum meruit claim against client and not successor attorney who settled case, and Mager , 797 A.2d at 958-59, for proposition predecessor counsel had no quantum meruit claim against anyone other than former client). The Superior Court specifically stated "[u]ntil our supreme court holds otherwise, we will not recognize a claim for quantum meruit by a former attorney against a subsequent attorney." Id. at 898. However, the Superior Court further held the contract between Attorney Weiler and Meyer Darragh was enforceable against Malone Middleman, and although a claim in quantum meruit cannot succeed where a valid contract applies, Meyer Darragh was entitled to recover two-thirds of the contingent fee from the Eazor Litigation under the contract. See id. at 899.[3]
Malone Middleman filed a petition for allowance of appeal, questioning the Superior Court's award of breach of contract damages when no contract existed between itself and Meyer Darragh, and we granted review. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C. , 631 Pa. 452,113 A.3d 277 (2015).[4] We reversed the Superior Court *1098 and held no contract existed between Meyer Darragh as predecessor counsel and Malone Middleman as successor counsel, and as Malone Middleman was not a party to Weiler's contract with Meyer Darragh, Malone Middleman was not liable for a breach of contract. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C. , 635 Pa. 427, 137 A.3d 1247, 1258 (2016) ( Meyer Darragh II ), citing Electron Energy Corp. v. Short , 408 Pa.Super. 563, 597 A.2d 175, 177 (1991) ("[i]t is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract").
We further opined that, under this set of facts, the only recovery for Meyer Darragh would lie on a theory of quantum meruit . 137 A.3d at 1259. We acknowledged, however, that Meyer Darragh had not filed a cross-petition for allowance of appeal with respect to the Superior Court's decision rejecting recovery under quantum meruit, and the issue was therefore not before the Court. Id. at 1256 & n.9.[5] In concurring opinions, Chief Justice Saylor and Justice Todd acknowledged this Court has previously admonished successful litigants who file protective cross-appeals, specifically holding "a successful litigant need not file a protective cross-appeal on pain of waiver." Id. at 1260 (Saylor, C.J., concurring), citing Lebanon Valley Farmers Bank v. Commonwealth , 623 Pa. 455, 83 A.3d 107, 113 (2013) ( "[p]rotective cross-appeals by a party who received the relief requested are not favored"); see also id. (Todd, J., concurring). The concurring opinions expressly endorsed Meyer Darragh's filing of a cross-petition for allowance of appeal nunc pro tunc with respect to its quantum meruit claim. Id.
Accordingly, Meyer Darragh sought review of the Superior Court's denial of its claim for quantum meruit damages by filing a petition for allowance of appeal nunc pro tunc . Now before us is the following issue:
Whether the Superior Court erred in vacating the Judgment of the Court of Common Pleas with respect to Meyer Darragh's quantum meruit claim when Meyer Darragh performed legal work and incurred expenses on behalf of the client and doing so would force Meyer Darragh to engage that client, who has already paid its legal fees in full, in litigation or allow Malone Middleman to be unjustly enriched.
Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C. , 166 A.3d 1236 (Pa. 2017). This inquiry involves a pure question of law, and, accordingly, our standard of review is de novo and our scope of review is plenary. Liberty Mut. Ins. Co. v. Domtar Paper Co. , 631 Pa. 463, 113 A.3d 1230, 1234 (2015) (standard of review as de novo and scope of review as plenary for pure questions of law).
*1099 Meyer Darragh notes an award in quantum meruit yields "as much as deserved[,]" and "measures compensation under [an] implied contract to pay compensation as a reasonable value of services rendered." Brief for Appellant at 16, quoting Meyer Darragh I , 95 A.3d at 896 and Black's Law Dictionary 6th Ed. [1990] at 1243. Meyer Darragh acknowledges the well-settled principle in Pennsylvania that a client has a right to terminate his relationship with an attorney at any time, regardless of whether there exists a contract for fees, but notes such termination does not deprive an attorney of his right to recover payment under a theory of quantum meruit for services rendered to that client. Id. Meyer Darragh refines the question before this Court as from whom predecessor counsel may recover damages under quantum meruit . Meyer Darragh further acknowledges there is no Pennsylvania appellate case expressly permitting an action in quantum meruit against successor counsel, and that currently predecessor counsel may proceed only against the client on that theory. Id. at 17, citing Meyer Darragh I , 95 A.3d at 897. At the same time, Meyer Darragh observes there is no precedent that specifically prohibits a quantum meruit claim against successor counsel. Id.
Specifically, Meyer Darragh cites Johnson v. Stein , 254 Pa.Super. 41, 385 A.2d 514 (1978), for the proposition that successor counsel-in an action sounding in implied contract or quasi-contract principles-may be required to disgorge to predecessor counsel any fees predecessor counsel earned before its former client moved his case to successor counsel. In Johnson , the predecessor law firm had a contingency fee agreement with client, and assigned client's case to an associate attorney. When the associate departed the firm, he took client's case with him and ultimately negotiated a settlement. Id. at 515. Upon learning of the settlement, predecessor firm filed a "Notice of Attorney's Lien" seeking payment of the settlement funds into court until it could receive its entire contingent fee from the proceeds. Id.[6] The trial court ultimately struck the lien, ruling predecessor firm was not entitled to a contingent fee, but ordered the settlement proceeds to be distributed as follows: (1) the contingent fee amount paid to successor counsel (the former associate); (2) costs incurred during predecessor firm's representation paid to that firm; and (3) the balance of funds to the client. Id. The Superior Court affirmed, finding predecessor counsel was not entitled to a lien for its entire contingent fee, in part because the client paid the requisite contingent fee to successor counsel. Id. at 516. The panel did note in dicta , however, predecessor counsel might be able to recover from its former associate any fees it earned before client moved the case, in an action sounding in implied contract or quasi-contract principles. Id. at 517.
Meyer Darragh also cites *1100 Feingold v. Pucello , 439 Pa.Super. 509, 654 A.2d 1093 (1995), in which Attorney Feingold commenced work on behalf of client, Pucello, including securing an admission of liability from the opposing party and recommending a physician, before entering into a formal attorney-client relationship via a written agreement. Id. at 1094. When Feingold presented the client with a contingent fee agreement providing for 50% of the recovery, the client refused to sign it, hired another lawyer, and informed Feingold he could keep any work product. Id. Feingold sought recovery of fees from the client via a quantum meruit action. Recovery was denied, in part, because the client allowed Feingold to retain his work product, and thus Feingold had not conferred any benefit to the client. Id. at 1095. However, the Superior Court cited Johnson to suggest Feingold's quantum meruit claim would more properly lie against successor counsel; the panel noted it was successor counsel whose work may have been facilitated by Feingold's work, including his procurement of the opponent's admission of liability. Brief for Appellant at 18.
Meyer Darragh distinguishes certain cases where predecessor counsel was not permitted to recover fees from successor counsel in a quantum meruit action. In Styer v. Hugo , 422 Pa.Super. 262, 619 A.2d 347 (1993), three attorneys consecutively represented the same clients under contingent fee agreements in a personal injury case. The clients retained Attorney Styer first, but replaced him with Attorney Brill after becoming dissatisfied with slow progress. Attorney Brill entered into an agreement with Attorney Styer to divide any contingent fee received. Id. at 348. However, Attorney Brill and the clients disagreed on the value of the claim, resulting in the clients firing Brill and hiring Attorney Hugo. Id. at 348-49. The clients entered into a contingent fee agreement with Attorney Hugo, who was not made aware of the fee-sharing agreement between Attorneys Styer and Brill. Attorney Hugo ultimately settled the matter, and collected fees. Id. at 349. Attorney Styer sued Attorney Hugo for damages in quantum meruit . The Superior Court denied relief, holding Attorney Styer had not conferred any benefit to Attorney Hugo, and opining the applicability of quantum meruit "depends on the unique factual circumstances of each case[,]" focusing on "whether the defendant has been unjustly enriched." Brief for Appellant at 20, quoting Styer , 619 A.2d at 350. Meyer Darragh contends its claim against Malone Middleman is distinguishable because it performed significant work in the Eazor Litigation, placing Malone Middleman in the position to settle the matter and receive $67,000 in fees. According to Meyer Darragh, it would be inequitable-unjust enrichment-to allow Malone Middleman to retain the benefit conferred by Meyer Darragh without remuneration.
Meyer Darragh further distinguishes Fowkes v. Shoemaker , 443 Pa.Super. 343, 661 A.2d 877 (1995), and Mager v. Bultena , 797 A.2d 948 (Pa. Super. 2002), which denied quantum meruit recovery of fees by predecessor counsel against successor counsel. Meyer Darragh avers the Fowkes and Mager cases stand for the proposition that a quantum meruit claim brought by predecessor counsel against successor counsel would be inappropriate only if there existed an agreement between counsel regarding payment of fees. Brief for Appellant at 22. Meyer Darragh submits as this Court previously held the agreement between Meyer Darragh and Attorney Weiler did not entitle it to fees collected by Malone Middleman, see Meyer Darragh II , 137 A.3d at 1248, and there is no other agreement between counsel regarding the Eazor Litigation, the narrow proposition articulated in the Fowkes and *1101 Mager cases does not preclude recovery on a quantum meruit claim. Id.[7]
Finally, Meyer Darragh argues the time it spent preparing the Eazor Litigation for trial, including conducting depositions, selecting expert witnesses, reviewing medical records and preparing motions, directly benefitted Malone Middleman. Meyer Darragh submits it is Malone Middleman-not the Eazor Estate-which is liable to it in a quantum meruit action because the client has already paid the attorney fees it owed, and requiring the Eazor Estate to pay again would be unfair. According to Meyer Darragh, the equities lie in its favor and against Malone Middleman, which received the benefit of Meyer Darragh's work. Brief for Appellant at 27, citing Meyer Darragh II , 137 A.3d at 1259 (Saylor, C.J., concurring) (Superior Court precedent that "predecessor law firm may only proceed under a quantum meruit theory against its former client, but not against a successor law firm ... puts the client in an untenable position where ... the client has already paid the attorney fee in full to the successor law firm.") (internal citations omitted). Meyer Darragh concludes we should reverse the Superior Court and remand for entry of a verdict in its favor of $17,673.93.[8]
Malone Middleman argues the case law is consistent and not a single opinion holds that predecessor counsel can recover damages in quantum meruit claim against successor counsel. Malone Middleman claims the cases relied upon by Meyer Darragh-specifically Johnson and Feingold -provide mere dicta , and qualified dicta at best. Brief for Appellee at 19-22 ( Feingold "merely piles more dicta on top of the Johnson case's dicta ") (citation omitted).
Malone Middleman asserts Pennsylvania courts have continually held predecessor counsel who has been dismissed by a client does not have a quantum meruit claim against successor counsel who has settled the case and collected fees, and this rule is consistent with the equitable principles underlying a theory of recovery based on unjust enrichment. Malone Middleman argues in order for Meyer Darragh to recover damages in quantum meruit , it must demonstrate Malone Middleman's "enrichment"
*1102 as successor counsel was unjust-that Malone Middleman somehow misled or deceived Meyer Darragh. Brief for Appellee at 22-23, citing Styer , 619 A.2d at 350 and Meehan v. Cheltenham Twp. , 410 Pa. 446, 189 A.2d 593 (1963) (where two parties enter into contract which ultimately benefits third party and one contracting party fails to perform, in absence of third party's deception, performing party has no right to restitution against third party to remedy breach; although third party is enriched, enrichment not unjust). Malone Middleman avers there is no evidence of deception here, and no showing of any "unjust" benefit received, and accordingly, Meyer Darragh's quantum meruit claim must fail. Brief for Appellee at 43.
Malone Middleman further submits this case is controlled by the Superior Court's decisions in Mager, Styer and Fowkes , which are all factually similar. Malone Middleman asserts all three cases involved attorneys who were discharged by their clients, who entered into contingency fee agreements with successor counsel, and predecessor counsel unsuccessfully sought quantum meruit damages against successor counsel. Malone Middleman argues the precedent applies here to bar Meyer Darragh from recovering from Malone Middleman.
Finally, Malone Middleman notes the client in this case never paid the 40% contingency fee it agreed to pay, and thus it would not be unfair for Meyer Darragh to sue the Eazor Estate (instead of Malone Middleman) to recover fees. Brief for Appellee at 34, citing Fowkes , 661 A.2d at 879 (quantum meruit action by predecessor counsel lay against clients, not successor counsel, where successor counsel did not receive its entire fee). Malone Middleman observes it is only clients who have already paid successor counsel in full, but are then subject to a lawsuit by predecessor counsel, who are placed in the "untenable position" decried by Chief Justice Saylor. Brief for Appellee at 34, n.8, quoting Meyer Darragh II , 137 A.3d at 1259 (Saylor, C.J., concurring).[9]
A claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate:
(1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
Shafer Elec. & Const. v. Mantia , 626 Pa. 258, 96 A.3d 989, 993 (2014) (internal citations omitted). In the context of contingent fee matters, the principle of quantum meruit may apply when a client fires counsel before litigation proceeds are generated and a contingent fee can be collected. It is well-settled that "[a] client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if *1103 he does so, thus making performance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit [theory] a proper amount for the services which he has rendered." Meyer Darragh II, 137 A.3d at 1259, quoting Mager , 797 A.2d at 956, quoting Sundheim v. Beaver Cnty. Bldg. & Loan Ass'n , 140 Pa.Super. 529, 14 A.2d 349, 351 (1940) (additional citations omitted). Whether the doctrine of quantum meruit applies to allow recovery is a factual question in which the focus is not on what the parties intended, but rather on whether a party has been unjustly enriched. See Styer , 619 A.2d at 350, citing State Farm Mut. Auto. Ins. Co. v. Jim Bowe & Sons, Inc. , 372 Pa.Super. 186, 539 A.2d 391, 393 (1988) ("the most significant requirement for recovery is that the enrichment is unjust") (additional citations omitted).
In order to determine whether the defendant in a quantum meruit action has been unjustly enriched such that the plaintiff is entitled to damages, we consider whether the plaintiff has conferred a benefit on the defendant which has been realized and retained. Shafer , 96 A.3d at 993. Malone Middleman submits any benefit conferred by Meyer Darragh's work on the Eazor Litigation was realized, not by Malone Middleman, but by the Eazor Estate, and any quantum meruit claim therefore lies only against the Eazor Estate. We are not persuaded by this argument. It is axiomatic that without predecessor counsel's effective litigation of a civil action, successor counsel will not have the opportunity to reach a favorable verdict or settlement. In that sense, predecessor counsel who is fired by the client before collecting a fee for work on litigation, has obviously conferred a benefit upon both the client and successor counsel who concludes the matter and receives a percentage of the proceeds as a fee. In such a case, someone must make initiating counsel whole. See, e.g., Shafer , 96 A.3d at 993-94 (quantum meruit claim is a claim for unjust enrichment which "implies a contract [and] requires the defendant to pay to the plaintiff the value of the benefit conferred"); American and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc. , 606 Pa. 584, 2 A.3d 526, 545 (2010) (doctrine of unjust enrichment provides "person who has been unjustly enriched at the expense of another must make restitution to the other"); see also Appeal of Harris , 323 Pa. 124, 186 A. 92, 139 (1936) (lawyer whose work facilitated compensation for client whose property was condemned, and for bank holding mortgage on that property, may be compensated out of condemnation fund lawyer's work created). We hold recovery from successor counsel is proper on the facts presented, and we reject the Superior Court's contrary decision based on distinguishable precedent.
First, there is no question that Meyer Darragh's work on the Eazor Litigation contributed to the settlement ultimately negotiated by Malone Middleman. See Proposed Stipulated Facts at ¶¶ 12-17 and Exhibits 4, 5 and 25 to the Proposed Stipulated Facts (describing the work completed by Meyer Darragh on behalf of the Eazor Estate, including securing settlement of $15,000 from one insurer defendant to the Eazor Litigation). Accordingly, both Malone Middleman and the Eazor Estate received a benefit from Meyer Darragh's work on the Eazor Litigation. See Harris , 186 A. at 97 (it would be "unjust to permit the mortgagee [bank] to reap all the benefits of the attorney's endeavors" without sharing the fund created by those efforts). Further, Meyer Darragh was not paid for its work that contributed to this benefit, while the client completely discharged its payment obligation to Malone Middleman. In such a situation, where both the client and successor counsel retain *1104 a benefit achieved in part by predecessor counsel's work, where predecessor counsel has not been remunerated for that work, and no contract governs the situation, we hold predecessor counsel may recover damages in quantum meruit . The inquiry now becomes against whom that claim can be brought-the client or successor counsel.
Until today, our courts have not provided a clear roadmap on this question, but existing case law has allowed the possibility that the proper defendant in some quantum meruit situations might be successor counsel. For example, in Johnson , the court stated a predecessor law firm might have sued its clients directly to recover fees it lost when the clients moved their case to successor counsel, who obtained a settlement. 385 A.2d at 516. However, where the clients "ha[d] paid their counsel fee" to successor counsel, and therefore could not be held liable for any further payment of fees, the court acknowledged predecessor counsel could bring a "quasi-contract" action against successor counsel to recover fees if successor counsel was unjustly enriched through predecessor counsel's work. Id. at 516-517. We agree with this reasoning.
Moreover, we emphasize the cases relied upon by the Superior Court and Malone Middleman for the proposition that a predecessor law firm can proceed under a quantum meruit theory only against its former client, and not successor counsel, are factually distinguishable from this case. In Styer v. Hugo , for example, the client hired and fired two lawyers before hiring a third, and the third lawyer (Attorney Hugo) had no knowledge of a fee sharing agreement between the first two lawyers before achieving a settlement. The Superior Court determined under these circumstances any benefit that may have been transferred to Attorney Hugo as successor counsel was not unjust, and therefore he was not liable for quantum meruit damages. We note predecessor counsel's claim did not fail under these circumstances because there is a rule prohibiting all quantum meruit claims against successor counsel, but because predecessor counsel failed to demonstrate he conferred a benefit upon predecessor counsel which was unjust.[10] Styer , 619 A.2d at 351.
Nor did Mager create a rule that a quantum meruit claim by predecessor counsel lies only against the former client and never against successor counsel. Instead, predecessor counsel could not recover in that case because it could not establish the necessary elements of a breach of contract or quantum meruit claim against successor counsel. The Mager court's decision denying relief was grounded on the following: (1) the client agreed to indemnify successor counsel against any claim for fees by predecessor counsel and (2) predecessor counsel performed exceptionally minor work after agreeing to a contingent fee arrangement, and thus, there was no contingent fee earned upon which predecessor counsel could base a quantum meruit claim. 797 A.2d at 955, 958. Accordingly, the basis for the holding that any claim for counsel fees lay only against the client was not because such a claim is prohibited against successor counsel, but because the client had agreed to indemnify successor counsel against such a claim. Moreover, predecessor counsel was fully compensated for its work through the payment of regular invoices prior to the transfer of the *1105 compensation agreement to a contingent fee basis. Id. at 951-52.
Malone Middleman nevertheless claims it cannot be liable to Meyer Darragh because it did not receive the full 40% contingent fee identified in its fee agreement. The argument fails. For whatever reason, Malone Middleman accepted less than 40% as full payment of its fee by the Eazor Estate. Its decision to do so does not inoculate it against a meritorious quantum meruit claim by Meyer Darragh, where the record shows unjust enrichment. See, e.g., Meyer Darragh II , 137 A.3d at 1259 (Saylor, C.J., concurring) (allowing quantum meruit recovery from a client "puts the client in an untenable position where, as here, the client has already paid the attorney fee in full to the successor law firm").
Fowkes is inapposite. In that case, predecessor counsel was not permitted to seek quantum meruit recovery against successor counsel, and instead was required to sue the former client. Fowkes , 661 A.2d 877. Significantly, however, successor counsel specifically agreed to accept a lesser percentage contingent fee for the purpose of allowing the client to pay any fees they owed to predecessor counsel. Id. at 879. It is clear the clients in Fowkes were not unfairly placed in the position of paying excess fees to predecessor counsel; the discount received in their subsequent fee agreement was expressly intended to remunerate predecessor counsel. Here, however, there is no evidence of record-or even an allegation by Malone Middleman-that the discount Malone Middleman provided to the Eazor Estate was for the purpose of allowing the estate to pay fees to Meyer Darragh. In the absence of such an explicit agreement, we decline to hold predecessor counsel's quantum meruit claim for fees lies against the client rather than successor counsel; otherwise, successor counsel could evade liability to predecessor counsel once a dispute arose by accepting a lower fee and claiming it was never fully compensated by the client.
Accordingly, we hold, under circumstances like those presented here, predecessor counsel may recover damages in quantum meruit against successor counsel in a contingent fee dispute. Such a claim is viable only where the facts demonstrate unjust enrichment, that is, successor counsel has received and retained a benefit from predecessor counsel, which would be unjust to retain without some payment to predecessor counsel. Our decision today does not preclude a quantum meruit claim by predecessor counsel against a former client, where the benefit is similarly conferred upon and unjustly retained by the client without payment to predecessor counsel.
Accordingly, we reverse the Superior Court's decision, and remand to the trial court for reinstatement of its award of $14,721.39 in favor of Meyer Darragh.
Jurisdiction relinquished.
Chief Justice Saylor, Justices Baer, Todd, Donohue, Wecht and Mundy join the opinion

As the Eazor Litigation was settled after suit was filed, Malone Middleman was slated to receive 40% of the net proceeds of settlement pursuant to its contingency fee agreement with the Eazor Estate. See Exhibit C to the Proposed Stipulated Facts. The amount collected from the insurers was $235,000. See Proposed Stipulated Facts at ¶¶ 36-37. Forty percent of the net proceeds of settlement is $94,000. See Brief for Appellee at 29-30. However, Malone Middleman accepted a fee of $67,000 from the Eazor Estate, or approximately 28.5% of the entire amount collected. Id. The record does not explain the reduced fee, nor does it suggest Malone Middleman sought additional payment from its client.

Attorney Weiler, who died in October 2009, was not included as a defendant.
In its trial brief and at argument before the trial court, Meyer Darragh abandoned its claim against the Eazor Estate by noting the executors had already paid to Malone Middleman the entire amount the firm had requested of them, and they owed no additional fees. See Meyer Darragh's trial brief at 21.

Meyer Darragh would net $48,887.81 in fees under the contract, approximately three times the $14,721.39 in fees awarded by the trial court under a quantum meruit theory. Meyer Darragh I , 95 A.3d at 899, n.3 ; see also Trial Court slip. op. at 11 n.3.

We granted review of the following issues:
(1) Whether the Superior Court erred in vacating the Judgment of the Court of Common Pleas with respect to Meyer Darragh's breach of contract cause of action and in awarding damages to Meyer Darragh against Malone Middleman, P.C. under a breach of contract theory of liability when no contract existed between Meyer Darragh and Malone Middleman, P.C.?
(2) Whether the Superior Court erred in extending the reach and holding of Ruby v. Abington Mem. Hosp., 50 A.3d 128, 2012 Pa. Super. 114 (2012), app. den. 620 Pa. 710, 68 A.3d 909 (2013) from creating duties with respect to partner-attorneys leaving a law firm to creating duties to unrelated third-party after the departure of an employee, non-partner attorney?

It is clear Meyer Darragh did not file such a cross-petition because it received the relief it sought when the Superior Court allowed recovery on the breach of contract action.

An attorney's lien, also known as a charging lien, is defined, in pertinent part, as "[t]he right of an attorney to have expenses and compensation due for services in a suit secured to the attorney in a judgment, decree or award for a client." Black's Law Dictionary 6th Ed. (1990) at 233. A charging lien will be recognized and applied when: (1) there is a fund in court or otherwise applicable for equitable distribution; (2) the services of an attorney operated to substantially or primarily secure the fund from which he seeks to be paid; (3) it was agreed counsel look to the fund and not the client for compensation; (4) the lien claim is limited to costs, fees or other disbursements incurred in the litigation that created the fund; and (5) equitable considerations exist that necessitate the recognition and application of the charging lien. Johnson , 385 A.2d at 515-16, citing Recht v. Clairton Urban Redevelopment Auth. , 402 Pa. 599, 168 A.2d 134, 138-39 (1961).

Meyer Darragh also cites decisions from other jurisdictions which have permitted predecessor counsel to recover fees from a successor under principles of quantum meruit . Brief for Appellant at 23-25, citing Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C. , 287 P.3d 842, 844 (Colo. 2012) (counsel who withdrew from matter was entitled to recover fees from former co-counsel under quantum meruit ); Crumley & Assoc., P.C. v. Charles Peed & Assoc., P.A., 219 N.C.App. 615, 730 S.E.2d 763, 766 (2012) ("where the entire contingent fee is received by the former client's subsequent counsel," predecessor counsel has claim in quantum meruit against subsequent counsel).

Meyer Darragh insists it is entitled to $17,673.93, although the trial court, after examining the itemized bill the firm submitted and excluding the amounts related to work on the fee dispute, calculated its verdict at $14,843.89. Trial Ct. slip. op. at 14. Malone Middleman submits Meyer Darragh waived its claim for a higher quantum meruit award by failing to challenge the amount in the Superior Court, and in fact requesting the Superior Court to affirm the trial court's award of $14,721.39. See Appellant's Superior Court Brief at 25. Meyer Darragh has not provided any argument regarding reviewable error in the calculation of damages, and instead simply states it now seeks the higher amount. However, Meyer Darragh sought, and this Court granted, review on the sole question of whether a quantum meruit claim can be brought by predecessor counsel against successor counsel. 166 A.3d 1236. Accordingly, Meyer Darragh's claim for the higher amount of damages is waived and we do not consider it further. See Pa.R.A.P. 123(a) ("All grounds for relief demanded shall be stated in the application and failure to state a ground shall constitute a waiver thereof").

Malone Middleman also claims jurisprudence from other jurisdictions-including some of the case law relied upon by Meyer Darragh-supports a holding that quantum meruit damages may be recovered from successor counsel only when successor counsel was paid in full by the client. See Brief for Appellee at 36, quoting Crumley , 730 S.E.2d at 766 (predecessor firm "has a claim in quantum meruit to recover the reasonable value of those services from the former client, or, where the entire contingent fee is received by the former client's subsequent counsel, from the subsequent counsel").

The panel's conclusion there was no benefit conferred upon successor counsel led it to suggest-in dicta -that predecessor counsel might have a claim in quantum meruit against the clients instead. But Malone Middleman's suggestion Styer held a quantum meruit claim can only be brought against the former client is a mischaracterization of that decision.