J-A14012-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ARCHINACO/BRACKEN, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL J. CORDES D/B/A SAMUEL J. | : | No. 942 WDA 2019 |
| CORDES & ASSOCIATES | : | |

Appeal from the Order Entered May 20, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): Docket No. GD-16-002943

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    FILED NOVEMBER 19, 2020

Appellant, Archinaco/Bracken, LLC ("A/B"), appeals from the May 20, 2019 order entering summary judgment in favor of Appellee, Samuel J. Cordes, doing business as Samuel J. Cordes and Associates ("Cordes"), and dismissing A/B's second amended third-party complaint with prejudice. After review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> In February 2013, Janice Prewitt ("Prewitt") hired A/B to represent her because she asserted her employer had illegally recorded her telephone calls. (Complaint, ¶¶ 6,19). A/B and Prewitt investigated the wiretapping but ultimately decided not to initiate litigation at that time. A/B continued to assist Prewitt with issues pertaining to her employment.
>
> Around the first quarter of 2014, Prewitt noticed that attorney Archinaco was not returning her calls. (Prewitt

Deposition, 24). Around May 2014, Prewitt was dissatisfied with the atmosphere at her workplace, and grew more frustrated with A/B's services because she perceived that A/B was not returning her calls (Prewitt Deposition, 50-56). Prewitt began to look for a new attorney.

On August 27, 2014 Prewitt was terminated from her employment[.] (Complaint, ¶ 61). On the same day, Prewitt met with attorney Bracken of A/B to discuss her termination from her employment but did not inform him of her dissatisfaction with A/B's services. (Prewitt Deposition, 68). Following the meeting, Prewitt sent an e-mail to attorney Bracken requesting him to not take any action until she decided what she wanted to do. Prewitt was considering options other than A/B. Prewitt requested her fee agreement from A/B which she sent to her friend, attorney Mark Santo. (Prewitt Deposition 83, 84). Attorney Santo recommended Cordes and represented that he heard that Cordes was one of the best employment law firms in Pittsburgh. (Prewitt Dep. 88). At some point between August 27 and September 5, Prewitt met with Cordes and decided she wanted to move forward with Cordes as her attorney. (Prewitt Deposition, 93-94). On September 5, 2014, Prewitt terminated her relationship with A/B.

On December 23, 2014, Cordes filed a complaint [against Prewitt's former employer] on Prewitt's behalf asserting that Prewitt had been terminated on account of her race and asserting violations of federal and state wiretap laws. Upon learning of Prewitt's retention of Cordes, attorney Archinaco of A/B sent a letter to Cordes asserting an attorney lien [of $ 16,790 for 33.4 hours of service] relating to his previous representation of Prewitt. (Complaint, ¶ 98). [Prewitt's lawsuit against her former employer, wherein she was represented by Cordes, settled in June of 2015.] Cordes then filed a declaratory judgment action seeking to determine whether Prewitt or A/B is entitled to the [$16,790] asserted in the attorney lien. In response, A/B filed, inter alia, the instant Third-Party Complaint against Cordes claiming Cordes had interfered with A/B's relationship with Prewitt.

\* \* \*

On February 26, 2016, Prewitt filed a declaratory judgment action seeking to determine whether Prewitt or A/B was entitled

to the disputed $16,790.[1] On March 18, 2016, A/B filed a Third-Party Complaint to join Cordes as a Third-Party Defendant, asserting claims of intentional interference.[2] On May 2, 2017, Cordes filed [a] Motion for Summary Judgment.

Trial Court Opinion, 10/28/19, at 2-3.

On April 3, 2018, A/B filed a motion to amend its third party complaint to include a count of quantum meruit against Cordes. On May 7, 2018, the trial court granted A/B's motion and permitted A/B to file an amended complaint. A/B filed its second amended complaint on May 14, 2018.

Cordes filed preliminary objections to A/B's second amended complaint on June 4, 2018, and on September 19, 2018, A/B filed a brief in opposition. On October 30, 2018, the trial court sustained in part and overruled in part Cordes's preliminary objections. The trial court sustained Cordes's preliminary objection seeking to limit the maximum amount that A/B could recover in its claim for quantum meruit at $16,790 and overruled the preliminary objections in all other respects.

A/B filed a motion for reconsideration or in the alternative a motion to amend the complaint on January 15, 2019. On March 7, 2019, the trial court filed an opinion and order denying A/B's motion. Thereafter, Cordes filed a

_____

[1] Due to A/B's lien demand of $16,790, Cordes placed $16,790 in an escrow account on July 6, 2016.

[2] The trial court entered an order severing the instant case, A/B's declaratory judgment action against Cordes, from the cause of action that Prewitt filed against A/B. Order, 11/21/17.

supplemental motion for summary judgment on April 1, 2019. On April 5, 2019, the trial court scheduled a hearing on Cordes's motion for summary judgment. On May 1, 2019, A/B filed a response in opposition to Cordes's motion for summary judgment.

At the conclusion of the May 20, 2019 hearing, the trial court granted Cordes's motion for summary judgment and dismissed A/B's second amended third-party complaint with prejudice. This timely appeal followed.[3]

On appeal, A/B asserts that the trial court erred in granting summary judgment in favor of Cordes and in failing to grant A/B's motion for reconsideration or its motion to amend its complaint. A/B's Brief at 6. A/B avers that the trial court's ruling was based on an incomplete record because the pleadings remained open at the time summary judgment was entered, and although the settlement agreement between Prewitt and her former employer was produced for in camera review, the amount of the settlement was redacted. Id. at 20. Additionally, A/B claims that the trial court erred in concluding that A/B was unable to prove Cordes intentionally interfered with A/B's contract with Prewitt, and the trial court failed to provide its basis for

_____

[3] The trial court did not direct A/B to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

ruling in favor of Cordes with respect to A/B's quantum meruit claim.[4]  Id. at 20-21.

"The question of whether summary judgment is warranted is one of law, and thus our standard of review is de novo and our scope of review is plenary." City of Philadelphia v. Cumberland County Bd. of Assessment Appeals, 81 A.3d 24, 44 (Pa. 2013).  Moreover, the following principles are well settled:

> We may reverse if there has been an error of law or an abuse of discretion. … We must view the record in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Furthermore, in evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes

_____

[4] A/B's statement of questions presented, which is required pursuant to Pa.R.A.P. 2116, states as follows: "1. Whether the lower court abused its discretion in failing to grant A/B's Motion for Reconsideration or Alternatively Motion to Amend Complaint?  2. Whether the lower court committed an error of law or abused its discretion in granting summary judgment in favor of Cordes?"  A/B's Brief at 6.  These issues are vague and fail to illustrate the bases upon which A/B believes the trial court erred.  On these grounds, we could find waiver.  See Krebs v. United Refining Co. of Pennsylvania, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by the statement of questions involved will not be considered on appeal); see also Pa.R.A.P. 2116(a) (providing, inter alia, "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").  However, A/B expounds on its claims of error in the summary of the argument and argument portions of its brief, and we conclude that appellate review is not precluded.  Accordingly, we decline to find waiver.

the entitlement of the moving party to judgment as a matter of law.

Carlino East Brandywine, L.P. v. Brandywine Village Association, 197 A.3d 1189, 1199-1200 (Pa. Super. 2018) (citation omitted).

Our standard of review of a trial court's order denying a party leave to amend a pleading is limited to considering whether the trial court erred as a matter of law or abused its discretion. Schwarzwaelder v. Fox, 895 A.2d 614, 621 (Pa. Super. 2006). Pennsylvania Rule of Civil Procedure 1033(a) permits amendment of pleadings and provides that "[a] party, either by filed consent of the adverse party or by leave of court, may at any time … amend the pleading." However, although Rule 1033(a) provides a method for amending a pleading, it does not provide a party the automatic right to do so. See id. (requiring consent or leave of court to amend a pleading). While the right to amend should not be withheld when there is some reasonable possibility that the amendment can be accomplished successfully, "where allowance of an amendment would … be a futile exercise, the [pleading] may be properly dismissed without allowance for amendment." Wiernik v. PHH U.S. Mortg. Corp., 736 A.2d 616, 624 (Pa. Super. 1999).

First, we address A/B's claim that the trial court erred in ruling on Cordes's motion for summary judgment because the pleadings remained open. A/B's Brief at 33. A/B provides no basis upon which this Court may conclude that pleadings remain open merely because A/B attached a notice to plead to its May 1, 2019 "Material Facts In Opposition To Samuel J. Cordes

- 6 -

D/B/A Samuel J. Cordes & Associates' Motion For Summary Judgment." After review, we cannot conclude that A/B's Material Facts In Opposition filing constitutes a pleading as defined by the Rules of Civil Procedure. See Pa.R.C.P. 1017(a) (defining pleadings as a complaint and answer, a reply if the answer contains new matter, a counterclaim or a cross-claim, a counter-reply if the reply to a counterclaim or cross-claim contains new matter, and a preliminary objection and a response thereto). Therefore, we discern no error of law in the trial court ruling on Cordes's motion for summary judgment merely because A/B attached a notice to plead to a court filing.

Second, there is no merit to A/B's argument that the trial court ruled on Cordes's motion for summary judgment on an incomplete record. A/B's Brief at 23-27. A/B asserts that the trial court erred in concluding that A/B was limited to recovering only $16,790, the amount in its lien letter, because at the time of its ruling, the trial court was not aware that Cordes received a six-figure fee for representing Prewitt. Id.

Although the amount of the settlement received by Prewitt from her former employer was redacted, that amount had no bearing in A/B's suit against Cordes. There is no basis upon which A/B was entitled to any damages based on the amount received in Prewitt's settlement with her former employer. The trial court stated:

> No Pennsylvania law, however, gives [A/B] the right to recover a proportion of a contingent fee.

> No Pennsylvania appellate court has ever awarded a proportionate share of a contingency fee to a firm discharged by the client well prior to the occurrence of the contingency, for the simple reason that a client may discharge an attorney at any time, for any reason. Once the contractual relationship has been severed, any recovery must necessarily be based on the work performed pursuant to the contract up to that point. Where the contingency has not occurred, the fee has not been earned.

Mager v. Bultena, 797 A.2d 948, 958 (Pa. Super. 2002).

Trial Court Memorandum and Order, 3/7/19, at 3.

On appeal, A/B argues that Mager was decided prior to Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 179 A.3d 1093 (Pa. 2018), and is inapplicable. A/B's Brief at 28. We disagree.

The decision in Meyer, Darragh did not overrule the holding from Mager, and as will be discussed in greater detail below, Meyer, Darragh applies only where the predecessor counsel (A/B) proves the successor counsel (Cordes) received and retained a benefit from the predecessors counsel's efforts; i.e., unjust enrichment. Id. at 1105. Moreover, we agree with the trial court's conclusion that A/B was limited to recovering $16,790 because that is the amount A/B claimed it was owed in its lien letter. Trial Court Memorandum and Order, 3/7/19, at 3. It was not until A/B learned that Cordes may have received a larger-than-expected contingency fee that A/B initiated the underlying action in which it sought a larger fee.

The trial court also illustrated why the amount of Cordes's fee was immaterial to A/B's fee as follows:

> [A/B] suspects (or knows) that Cordes's fee was substantial, but what if Cordes's fee was only $5,000, or some amount substantially lower than [A/B's] hourly bill? In that situation, it would not benefit [A/B] to insist that [its]s damages were limited to a proportion of the contingent fee. Instead, [A/B] would benefit only if [it] insisted that it would be fair for [its] damages to be the number of hours worked multiplied by a reasonable fee. The damage analysis for a quantum meruit claim should not be based upon who would benefit most in any given set of circumstances, but instead should be based upon the reasonable value of services. Therefore, where we know what [A/B] billed for [its] "hourly" services, knowing the value of Cordes'[s] fee does not change the damages analysis.

Trial Court Memorandum and Order, 3/7/19, at 4, n.1.

The amount of Prewitt's settlement and the contingency fee subsequently received by Cordes had no bearing on the amount A/B may have been owed. Thus, we conclude that there is no merit to A/B's assertion that the trial court granted summary judgment on an incomplete record.

Next, we address A/B's argument that the trial court erred in concluding that A/B was unable to prove Cordes intentionally interfered with A/B's contract with Prewitt. A/B's Brief at 20. The necessary elements of tortious interference with a contract are:

> (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. 2009) (citations and quotation marks omitted).  A/B argues that the trial court erred in concluding that A/B failed to establish that Cordes's actions were intentional and improper.  A/B's Brief at 36.

The trial court addressed this issue as follows:

A. A/B has failed to provide evidence that Cordes intended to harm A/B's contractual relationship.

A/B has failed to produce any evidence that Cordes had any specific intent to persuade Prewitt to terminate A/B. This [c]ourt finds A/B's allegations that attorney Santo was instructed by Cordes to specifically target Prewitt to terminate A/B are based on speculation and are unsupported by any factual evidence. This [c]ourt further finds that no evidence was presented that Cordes even knew that Prewitt was represented by A/B before meeting with her as a prospective client. Therefore, A/B has failed to produce sufficient evidence to support the element of intent.

B. A/B has failed to produce evidence that Cordes's actions were improper.

A/B has equally failed to produce sufficient evidence of any improper conduct by Cordes.

The Superior Court in Phillips [v. Selig, 959 A.2d 420, 424, (Pa. Super. 2008),] found that an attorney "coveting" another's business and taking steps to procure it for himself does not constitute per se interference with contractual relations. Id. at 431. The court recognized that Section 768 of the Restatement (Second) of Torts sanctions reasonable competition between competitors. A lawyer's right to compete with others implies his or her right to seek to divert business from competitors. Id. To assess whether the interference is improper, the following factors are to be considered:

(a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced; (e) the social interests in protecting the freedom of action of the

- 10 -

actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

Phillips, 959 A.2d at 432.

First, this [c]ourt finds nothing improper about the nature of Cordes's conduct. Cordes simply met with a prospective client who had been referred to him by a third party. A/B agrees that there is nothing improper about Cordes speaking with Prewitt and agreeing to represent her ([A/B] Dep. 19-23). A/B advances a theory that Cordes instructed Attorney Santo to somehow persuade Prewitt to terminate her agreement with A/B and to hire Cordes instead (A/B's Brief p.7). Yet, A/B submitted no evidence that Cordes knew of Prewitt before Attorney Santo had referred her. There is likewise no evidence that Cordes contacted Santo and requested that he send Prewitt his contact information. There is no evidence that Cordes or Attorney Santo made any negative or disparaging statements about A/B to Prewitt. Prewitt testified that it was her decision to terminate her relationship with A/B because she was dissatisfied with A/B's services. (Prewitt Dep. 90). Although, Prewitt stated that she did forward the A/B fee agreement to Cordes, she does not recall whether it occurred prior to her terminating A/B (Prewitt: 128:4-13). This [c]ourt finds that there is nothing improper about the nature of Cordes's conduct.

Second, Cordes's motive was to perform work for Prewitt. Taking steps to procure business is not improper. Phillips, 959 A.2d at 432.

Third, although Cordes's conduct interfered with A/B's interest in continuing to represent a client, an attorney's relationship with a client is not absolute and is subject to the client's will. [Phillips, 959 A.2d 431, n.6.] The fact that a client can terminate the representation at any time creates a limitation on the level of protection that the interest to continue representation will receive. The fact that Prewitt decided to terminate representation on her own establishes that Cordes did nothing to interfere with A/B's interest.

Fourth, by agreeing to meet with Prewitt, Cordes sought to advance his interest in obtaining a new client upon a referral from a third party. Given that there is no evidence that Cordes [utilized]

improper means to advance this interest, this [c]ourt finds that this interest to be legitimate.

Fifth, the social interests protecting Cordes's conduct are embodied by society's interest in competition within the legal field and a client's interest in being represented by the attorney of her choosing. Given that A/B's contractual interests are limited by the client's right to terminate the representation at any time, competition justifies protecting Cordes's actions in meeting with Prewitt in light of the absence of any indication that Cordes instituted improper means.

Sixth, while a third party committing an act upon the instruction of the defendant would be enough to satisfy the proximity factor, this is not the case here. There is no evidence that Cordes instructed Attorney Santo to solicit Prewitt as a client.

Seventh, the relations between the parties do not point in any direction. Neither Cordes nor Attorney Santo have a relationship with A/B. A/B and Prewitt had a relationship which Prewitt had the right to terminate at any time.

Trial Court Opinion, 10/28/19, at 5-7.

After reviewing the record in the light most favorable to A/B as the nonmoving party, we agree with the trial court's conclusion. Carlino East Brandywine, L.P., 197 A.3d at 1199-1200. A/B could not establish the elements of intent and improper conduct, which are necessary components of a claim for tortious interference with a contract. Walnut Street Associates, Inc., 982 A.2d at 98. Moreover, there is no amendment that would advance A/B's claims because A/B already valued its service to Prewitt at $16,790. Accordingly, A/B is due no relief on this claim of error.

In its final issue, A/B avers that the trial court erred in granting Cordes's motion for summary judgment because it failed to provide its basis for ruling

with respect to A/B's quantum meruit claim. After review, we conclude that this claim is meritless.

At the outset, we note that when A/B filed its third-party complaint against Cordes on March 18, 2016, A/B did not include a claim based on quantum meruit. Although we are not aware of authority prohibiting such a claim, we note that while this case was pending in the trial court, the Supreme Court of Pennsylvania rendered its decision in Meyer, Darragh.

In Meyer, Darragh, our Supreme Court held that under certain circumstances, a predecessor firm could recover damages in quantum meruit against a successor firm in a contingent fee dispute. Meyer, Darragh, 179 A.3d at 1095. In the instant case, on May 7, 2018, the trial court granted A/B's motion to amend its third-party complaint. On May 14, 2018, A/B filed its second amended complaint in which it sought to recover damages in quantum meruit from Cordes pursuant to Meyer, Darragh. In its preliminary objections to A/B's second amended third-party complaint, Cordes objected to retroactive application of Meyer, Darragh. Preliminary Objections, 6/4/18 at 4. On October 30, 2018, the trial court sustained Cordes's preliminary objection limiting the amount that A/B could recover in quantum meruit to $16,790, and it overruled the preliminary objections in all other respects. Order, 10/30/18. However, the trial court did not mention Meyer, Darragh.

In its brief on appeal, Cordes provides a thorough discussion in opposition to the retroactive application of Meyer, Darragh, relative to

recovery in quantum meruit. However, we conclude that we need not determine whether Meyer, Darragh applies retroactively, because we conclude that Meyer, Darragh does not apply at all.

Meyer, Darragh held that predecessor counsel could recover damages in quantum meruit against successor counsel in a contingent fee dispute only where the facts demonstrate unjust enrichment. Id. at 1105. Therefore, in the instant case, in order for Meyer, Darragh to apply and allow A/B to recover in quantum meruit, A/B was required to show that Cordes received and retained a benefit from A/B's efforts. Id.

As stated, A/B already placed a value on its services to Prewitt in the amount of $16,790. Any legal fees received by Cordes from the subsequent settlement with Prewitt's former employer had no bearing on A/B's fee. Moreover, the only evidence of A/B's legal work produced on Prewitt's behalf is a "draft complaint," which consists of a timeline of events terminating in July of 2013, more than one year before Prewitt was terminated by her former employer. N.T., 11/2/16, at 64-67; (A/B's Exhibit 9). There is no indication that A/B conducted any work for Prewitt following Prewitt's termination from her former employer. There is no basis upon which A/B can establish that any work it conducted on behalf of Prewitt benefitted Cordes. In sum, A/B cannot establish unjust enrichment, and therefore, Meyer, Darragh does not apply. Because there was no unjust enrichment, no additional discussion of quantum meruit by the trial court was warranted, and A/B's final issue fails.

After review, we discern no error in the order denying A/B's motion for reconsideration or to amend, and granting summary judgment in favor of Cordes. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2020