J-A04011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL RUDINSKI, JOSEPH F. ORSO, III, AND JERRY E. LYNCH, T/B/D/A RUDINSKI, ORSO, & LYNCH | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| DEBRA HAWK | : : | |
| Appellant | : : : | No. 752 MDA 2025 |

Appeal from the Judgment Entered June 6, 2025
In the Court of Common Pleas of Snyder County
Civil Division at No(s): CV-0083-2017

BEFORE: PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: APRIL 7, 2026**

Debra Hawk appeals from the judgment entered by the Snyder County Court of Common Pleas in favor of Michael Rudinski, Joseph F. Orso, III, and Jerry E. Lynch t/b/d/a Rudinski, Orso, & Lynch (collectively, "the Firm"). After a bench trial, the trial court found Hawk liable to the Firm for unjust enrichment under the theory of *quantum meruit* and entered judgment in the Firm's favor in the amount of $12,230.00. After careful review, we affirm on the basis of the trial court's well-reasoned opinion.

The trial court set forth in detail the lengthy procedural and factual history.

> This matter stems from a lengthy procedural posture. [Hawk] hired attorney Jerry Lynch to represent her regarding equitable [distribution] in her divorce and other ancillary matters. At the time attorney Lynch was hired to represent Ms. Hawk, he was employed at [the Firm]. The legal representation letter indicated

that there would be a non-refundable fee of $1,000.00 as a retainer, enabling the [F]irm to open the file and undertake legal representation. Further, the agreement letter reads as follows:

> in addition, we have agreed to undertake the Equitable Distribution aspect of the case on a contingent fee basis of 25% (twenty five) (sic). In addition, the parties agree that maximum payment in the form of a contingency fee would be Twenty-Five Thousand dollars ($25,000.00). If we are unsuccessful on the Equitable Distribution Claim, you will owe us no additional fees. If the equitable distribution claim is successful, we will retain a percentage of twenty percent (sic).

Attorney Lynch remained involved in this divorce matter from approximately December 19, 2014, when he entered his appearance, until March 16, 2016, when he withdrew his appearance. The attorney-client relationship deteriorated throughout the legal representation, and Ms. Hawk subsequently terminated the representation. Attorney Lynch and/or the Firm returned [Hawk's] legal file to her. [Hawk] was in possession of all documents contained within the file. [The Firm's] Answers to [Hawk's] Request for Production of Documents stated "[a]ll items should be located in Ms. Hawk's file." As of the date of filing this Opinion, Ms. Hawk's divorce matter has not concluded, and has remained open since October of 2013. There have been no filings by either party in this divorce matter since January of 2021. On February 21, 2017, the [Firm] filed an action against [Hawk] claiming various counts, including a claim for unjust enrichment.

While the parties were in discovery, [Hawk] moved for sanctions against the [Firm] for their failure to fully answer or object to interrogatories and their failure to produce all requested documents. The [trial c]ourt granted the Motion for Sanctions on October 25, 2018 (hereinafter the "2018 Order"). The 2018 Order contained the following sanctions: (1) first, "all answers to written interrogatories served by [the Firm] shall be deemed verified by Jerry E. Lynch pursuant to Pa.R.C.P 4006(a)(1)," (2) second, "factually, the only offer of settlement that may be alleged by [the Firm] and the terms thereof shall be that which is identified in the email correspondence from Robert H. Slivinski, Esquire, to Jerry Lynch, Esquire, dated February 19, 2016 and the email of Jerry Lynch, Esquire to Robert H. Slivinski, Esquire dated February 22,

2016," (3) third, "any allegations on the part of [the Firm] as to any counteroffer made shall be limited to response that a distribution of a garden center business and real estate thereon was rejected by Husband; and the alleged response that Husband did not agree to pay Attorney Lynch's contingency fee with [Hawk] as was allegedly part of an offer. Nothing herein shall be construed as a court ordered finding of fact affecting any burden of proof. This limitation of allegations that can be made pursuant to failure to sufficiently respond, answer or object to written interrogatories," (4) fourth, "factually, no allegation of settlement in the divorce action can be documented or memorialized in this matter," (5) fifth, "[the Firm] never obtained full disclosure of all marital property subject to equitable distribution prior to any alleged negotiation of a settlement in this matter," (6) sixth, ["the Firm is] prohibited from presenting at trial or arbitration in this matter any letter, contacts, emails, electronic messaging, agreement, memorandum establishing terms of any fee agreement, any negotiation for settlement, written settlement; complete final, voluntary settlement, offer of settlement, counter offers for settlement, negotiation of settlement; acceptance of settlement of successful disposition of [Hawk's] equitable distribution claim; discovery received in the divorce action; and [Hawk's] inventory pursuant to PA. R.C.P. 1920.33, **unless provided previous to this order in response to [Hawk] pursuant to [Hawk's] Request For Production Of Documents or [Hawk's] Interrogatories (First Set)**."

After the 2018 Order, [Hawk] made a Motion for Summary Judgment, asserting that the [Firm] could not sustain the claims of unjust enrichment or breach of contract. The [trial c]ourt granted the Motion for Summary Judgment in favor of [Hawk]. The [Firm] timely appealed this decision. The Superior Court of Pennsylvania heard the matter and reversed [the trial c]ourt's decision in part. [**See Rudinski v. Hawk**, No. 649 MDA 2019, 2020 WL 1490951 (Pa. Super. filed Mar. 27, 2020) (unpublished memorandum) (reversing and remanding because the trial court erred as a matter of law in ruling that the existence of an express contract precluded the Firm's claim of unjust enrichment pursuant to *quantum meruit*)]. The Superior Court remanded this matter to th[e trial c]ourt to decide the *quantum meruit* issue.

[After the Board of Arbitrators ruled in Hawk's favor, the Firm appealed and the matter was scheduled for a bench trial.]

- 3 -

Prior to the bench trial, [Hawk] made a Motion in Limine requesting that the sanctions imposed in the 2018 Order be re-imposed in the current proceedings. [. . .] A proposed order, filed to the [trial c]ourt by [Hawk], granting the Motion in Limine was signed by the late Judge Michael H. Sholley on January 26, 2022 (hereinafter the "2022 Order"). The 2022 Order listed several sanctions that were broader and more [extensive] than the 2018 Order. The different or additional provisions in the 2022 Order included the following sanctions on the [Firm]: (1) first, the "[Firm is] precluded from proof or assertion [the Firm] brought about any settlement of the divorce action from which [Hawk] received a benefit," (2) second, the "[Firm] is prohibited from asserting to the trier of fact that there was any fee agreement with [Hawk] except the $1,000.00 non-refundable fee which [Hawk] paid and [the Firm] is precluded form presenting hours expended by [the Firm] on [Hawk's] behalf, any hourly rates [the Firm] charged and any expenses or loss occasioned by [the Firm]," and (3) third, the "[Firm] is precluded from presenting, asserting and offering any fact about other services, or fee agreements, or any other fee arrangements [Hawk] has had with any other attorney except the [Firm]." The Orders were further different in the statement under the sanction stating "[the Firm] is prohibited from presenting at trial any letter, contract, email, electronic messaging, agreement, memorandum, establishing terms of any fee agreement, any negotiation for settlement, written settlement, complete final, voluntary settlement, offers of settlement counter offer for settlement, negotiation of settlement; acceptance of settlement of successful disposition of [Hawk's] equitable distribution claim, discovery received in the divorce action; and [Hawk's] inventory pursuant to PA R.C.P. 1920.33." As stated above the 2018 Order included a similar sanction; however, the 2018 sanction included the following language: "**unless provided previous to this order in response to [Hawk] pursuant to [Hawk's] Request for Production of Documents or [Hawk's] Interrogatories (First Set)**."

On December 20, 2023, on the day this matter proceeded to a bench trial, due to the stark differences between the 2018 and 2022 Orders and due to the [trial c]ourt postponing all action in the matter due to the National Health Emergency, this Jurist vacated the 2022 Order. After the bench trial was held, and after the parties filed their respective findings of facts and conclusions of law, th[e trial c]ourt found liability for the [Firm] on the basis of *quantum meruit*. Due to the parties not articulating the amount

of damages owed, and the complexity of establishing the exact amount of damages owed under *quantum meruit*, th[e trial c]ourt made a decision as to liability, and scheduled a separate hearing to establish damages.

[Initially, Hawk filed her notice of appeal before there was a determination as to damages. We vacated the judgment entered and quashed the appeal as premature. **See** Order, No. 861 MDA 2024, 10/23/24. On remand, the trial court held a hearing as to damages on February 10, 2025.]

On April 15, 2025, the [trial c]ourt issued its Findings of Fact and Conclusions of Law, which found that [Hawk] was liable to the [Firm] in the amount of $12,230.00. [Hawk] filed a Motion for Post-Trial Relief, which the [trial c]ourt denied on May 29, 2025.

Trial Court Opinion, 8/5/25, at 1-6 (brackets and footnotes omitted; emphasis in original).

On June 6, 2025, judgment was entered in the Firm's favor. Hawk timely appealed. Hawk and the trial court both complied with Pennsylvania Rule of Appellate Procedure 1925. **See** Pa.R.A.P. 1925(a)-(b).

On appeal, Hawk raises the following issues for our review.

I. Did the trial court abuse its discretion and err at law by failing to make the finding of the most significant requirement at law that the enrichment conveyed by [the Firm] to [Hawk] was equitable distribution of marital property so that [Hawk's] retention of the marital property could be adjudged "unjust"?

II. Did the trial court abuse its discretion and err[] by failing to find [the Firm] did not adequately protect whatever right it had for compensation for the unqualif[i]able services they had alleged and failing to enforce the law from the Superior Court's finding on the prior determination the fee agreement does not contain an hourly rate component and does not contain anything addressing termination or representation?

III. Did the trial court err[] as a matter of law by not enforcing the prior law of the case by sanctions against [the Firm] as reflected

- 5 -

in order dated October 25, 2018 and by vacating the prior order dated January 26, 2022 that was procedurally valid?

IV. Did the lower court abuse its discretion and err at law by engaging in the decision on damages when factually and legally [the Firm's] losses are not the measure of recovery absent proof that [Hawk] did not benefit from equitable distribution?

V. Did the lower court abuse its discretion and err at law when it found under the factual circumstances of this case [Hawk] liable, failed to dispose all claims for relief, erroneously bifurcating issues of liability from damages when no legal remedy can be had under the doctrine of unjust enrichment?

Appellant's Brief, at 1-2 (unnecessary capitalization omitted).

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

**Robins v. Robins**, 338 A.3d 184, 188 (Pa. Super. 2025), *appeal denied*, No. 458 MAL 2025, 2026 WL 105381 (Pa. Jan. 14, 2026) (citation omitted).

After a thorough review of the certified record, the parties' briefs, the applicable law, and the well-reasoned and comprehensive opinion of the Honorable Lori R. Hackenberg, we conclude that Hawk is not entitled to relief. The trial court correctly stated the law and thoroughly disposed of each issue raised on appeal. Specifically, the trial court held:

1) Although Hawk fired Attorney Lynch before the ultimate disposition of the action–equitable distribution of the marital property–the Firm could recover for unjust enrichment under *quantum meruit* because Hawk received the benefit of the Firm's legal services for her divorce action;

2) Although an hourly rate was not contained within the representation letter, under *quantum meruit* the compensation is "based on the number of hours worked multiplied by a fair fee[,]" and the record supported the trial court's finding that Attorney Lynch's hourly rate was $200.00[1] (quoting ***Mager v. Bultena***, 797 A.2d 948, 957 (Pa. Super. 2002));

3) The 2022 Order was clearly erroneous and would create a manifest injustice if followed, and therefore, the trial court was not precluded by the coordinate jurisdiction rule from vacating it, because it expanded the scope of the 2018 Order, would have prevented the Firm from making a meritorious claim by precluding any evidence of the work performed by the Firm, and Hawk's request in a motion *in limine* did not comply with the Rules of Civil Procedure governing contempt and sanctions. Alternatively, the 2022 Order itself violated the coordinate jurisdiction rule by "significantly chang[ing]" the 2018 Order;

4) The representation letter basing compensation on a contingency fee does not preclude recovery of damages for unjust enrichment under *quantum meruit* because Hawk terminated counsel prior to the completion of the contingency and the trial court's valuation of the services rendered was supported by the evidence; and

5) It was within the trial court's discretion to bifurcate the liability and damages portion of the trial and Hawk was not prejudiced.

***See*** Trial Court Opinion, 8/5/25, at 7-18.

_____

[1] The trial court opinion states it used an hourly rate of $200.00 based on Attorney Lynch's testimony but does set forth its damages calculation. ***See*** Trial Court Opinion, 8/5/25, at 10-11. In its findings of fact and conclusions of law, the trial court explained that it calculated the damages by multiplying the $200.00 hourly rate by the 66.15 hours worked by Attorney Lynch and subtracting the $1000.00 retainer which equals $12,230.00. ***See*** Findings of Fact and Conclusions of Law, 4/15/25, at ¶ 39 n.6.

Accordingly, we affirm on the basis of the thorough and apt opinion of President Judge Lori R. Hackenberg and adopt it as our own.[2] In any future filing with this Court or any other court addressing this ruling, the filing party shall attach a copy of President Judge Hackenberg's opinion.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/07/2026

---

[2] We do not endorse the statement from the trial court that the coordinate jurisdiction rule does not apply to a retired judge's ruling. **See** Trial Court Opinion, 8/5/25, at 12.

FILED

2025 AUG -5 AM 10: 36

PROTHONOTARY
CLERK OF COURTS
SNYDER COUNTY PA

| | |
|---|---|
| MICHAEL J. RUDINSKI, JOSEPH F. ORSO, III and JERRY E. LYNCH, t/d/b/a RUDINSKI, ORSO & LYNCH,<br><br>             Plaintiffs<br><br>     vs.<br><br>DEBRA HAWK,<br>            Defendant | IN THE COURT OF COMMON PLEAS OF THE 17TH JUDICIAL DISTRICT OF PENNSYLVANIA SNYDER COUNTY BRANCH<br><br>CIVIL ACTION<br><br>NO. CV-83-2017 |

**OPINION**

**Hackenberg, P.J., August** *5th*, **2025**

## I.    <u>Factual and Procedural History</u>

This matter stems from a lengthy procedural posture. The Appellant, Debra Hawk, hired attorney Jerry Lynch to represent her regarding equitable division in her divorce and other ancillary matters. At the time attorney Lynch was hired to represent Ms. Hawk, he was employed at Rudinski, Orso & Lynch (hereinafter the "Firm"). The legal representation letter indicated that there would be a non-refundable fee of $1,000.00 as a retainer, enabling the firm to open the file and undertake legal representation. Further, the agreement letter reads as follows:

> "[i]n addition, we have agreed to undertake the Equitable Distribution aspect of the case on a contingent fee basis of 25% (twenty five) (sic). In addition, the parties agree that maximum payment in the form of a contingency fee would be Twenty-Five Thousand dollars ($25,000.00). If we are unsuccessful on the Equitable Distribution Claim, you will

1

owe us no additional fees. If the equitable distribution claim is successful, we will retain a percentage of twenty percent (sic)."[1]

Attorney Lynch remained involved in this divorce matter from approximately December 19, 2014, when he entered his appearance, until March 16, 2016, when he withdrew his appearance. The attorney-client relationship deteriorated throughout the legal representation, and Ms. Hawk subsequently terminated the representation. Attorney Lynch and/or the Firm returned the Appellant's legal file to her. Appellant was in possession of all documents contained within the file.[2] Plaintiffs' Answers to the Appellant's Request for Production of Documents stated "[a]ll items should be located in Ms. Hawk's file."[3] As of the date of filing this Opinion, Ms. Hawk's divorce matter has not concluded, and has remained open since October of 2013. There have been no filings by either party in this divorce matter since January of 2021. On February 21, 2017, the Plaintiffs filed an action against the Appellant claiming various counts, including a claim for unjust enrichment.

While the parties were in discovery, the Appellant moved for sanctions against the Plaintiffs for their failure to fully answer or object to interrogatories and their failure to produce all requested documents. The Court granted the Motion for Sanctions on October 25, 2018 (hereinafter the "2018 Order"). The 2018 Order contained the following sanctions: (1) first, "[a]ll answers to written interrogatories served by Plaintiffs shall be deemed verified by Jerry E. Lynch pursuant to Pa. R.C.P 4006(a)(1)," (2) second, "[f]actually, the only offer of settlement that may be alleged by Plaintiffs and the terms thereof shall be that which is identified in the email correspondence from Robert H. Slivinski, Esquire, to Jerry Lynch, Esquire, dated February 19,

---

[1] The Court notes that the legal representation letter the Court has been provided is unsigned. The parties stipulated that this letter is authentic, admitted, and the binding document for this case. The date of the legal representation letter is March 18, 2015.

[2] Plaintiff's Response to Motion for Sanctions Pursuant to Pa. R. Civ. P. 4019(a)(1)(i)(vii), filed September 20, 2018.

[3] See Exhibit "D" of Defendant's Motion for Sanctions Pursuant to Pa. R. Civ. P. 4019(a)(1)(i)(vii), filed September 7, 2018.

2016 and the email of Jerry Lynch, Esquire to Robert H. Slivinski, Esquire dated February 22, 2016," (3) third, "[a]ny allegations on the part of Plaintiffs as to any counteroffer made shall be limited to response that a distribution of a garden center business and real estate thereon was rejected by Husband; and the alleged response that Husband did not agree to pay Attorney Lynch's contingency fee with Defendant as was allegedly part of an offer. Nothing herein shall be construed as a court ordered finding of fact affecting any burden of proof. This limitation of allegations that can be made pursuant to failure to sufficiently respond, answer or object to written interrogatories," (4) fourth, "[f]actually, no allegation of settlement in the divorce action can be documented or memorialized in this matter," (5) fifth, "[p]laintiffs never obtained full disclosure of all marital property subject to equitable distribution prior to any alleged negotiation of a settlement in this matter," (6) sixth, [p]laintiffs are prohibited from presenting at trial or arbitration in this matter any letter, contacts, emails, electronic messaging, agreement, memorandum establishing terms of any fee agreement, any negotiation for settlement, written settlement; complete final, voluntary settlement, offer of settlement, counter offers for settlement, negotiation of settlement; acceptance of settlement of successful disposition of defendant's equitable distribution claim; discovery received in the divorce action; and Defendant's inventory pursuant to PA. R.C.P. 1920.33, **unless provided previous to this order in response to Defendant pursuant to Defendant's Request For Production Of Documents or Defendant's Interrogatories (First Set).**"[4] (emphasis added).

After the 2018 Order, the Appellant made a Motion for Summary Judgment, asserting that the Plaintiffs could not sustain the claims of unjust enrichment or breach of contract. The Court granted the Motion for Summary Judgment in favor of the Appellant.[5] The Plaintiffs

---

[4] See the October 25, 2018, Order of the Court, signed by former Judge Michael T. Hudock.
[5] See the April 15, 2019, Order of the Court, signed by the late Judge Michael H. Sholley.

3

timely appealed this decision. The Superior Court of Pennsylvania heard the matter and reversed this Court's decision in part.[6] The Superior Court held that the Plaintiffs could potentially recover under a claim for unjust enrichment on this basis of *quantum meruit*.[7] The Superior Court remanded this matter to this Court to decide the *quantum meruit* issue.

This Court subsequently scheduled compulsory arbitration. On November 17, 2020, the Board of Arbitrators ruled in favor of the Appellant.[8] The Plaintiffs promptly appealed the Board of Arbitrators' award and demanded a jury trial. Upon a Motion from the Appellant, the matter was to be brought before the Court as a bench trial and not a jury trial, as the matter was one in equity and not of law.

Prior to the bench trial, the Appellant made a Motion in Limine requesting that the sanctions imposed in the 2018 Order be re-imposed in the current proceedings. On December 23, 2021, the Court issued a Rule to Show Cause to the Plaintiffs as to why the Motion in Limine should not be granted. The Rule issued by the Court gave the Plaintiffs until January 23, 2021, to file an Answer. On January 6, 2022, due to the National Health Emergency, the Court postponed all current actions in this matter.[9] A proposed order, filed to the Court by the Appellant, granting the Motion in Limine was signed by the late Judge Michael H. Sholley on January 26, 2022 (hereinafter the "2022 Order"). The 2022 Order listed several sanctions that were broader and more exclusive than the 2018 Order. The different or additional provisions in the 2022 Order included the following sanctions on the Plaintiffs: (1) first, the "[p]laintiffs are precluded from proof or assertion plaintiff brought about any settlement of the divorce action from which defendant received a benefit," (2) second, the "[p]laintiff is prohibited from asserting to the trier

---

[6] Superior Court of Pennsylvania Docket No. 649 MDA 2019.
[7] See *Rudinski, Orso & Lynch v. Hawk*, 649 MDA 2019, at 8.
[8] See the Oath and Award of the Board of Arbitrators dated November 17, 2020.
[9] See the January 6, 2022, Order of the Court.

4

of fact that there was any fee agreement with the defendant except the $1,000.00 non-refundable fee which defendant paid and plaintiff is precluded form presenting hours expended by plaintiff on defendant's behalf, any hourly rates plaintiffs charged and any expenses or loss occasioned by plaintiffs," and (3) third, the "[p]laintiff is precluded from presenting, asserting and offering any fact about other services, or fee agreements, or any other fee arrangements defendant has had with any other attorney except the plaintiff."[10] The Orders were further different in the statement under the sanction stating "[p]laintiff is prohibited from presenting at trial any letter, contract, email, electronic messaging, agreement, memorandum, establishing terms of any fee agreement, any negotiation for settlement, written settlement, complete final, voluntary settlement, offers of settlement counter offer for settlement, negotiation of settlement; acceptance of settlement of successful disposition of defendant's equitable distribution claim, discovery received in the divorce action; and defendant's inventory pursuant to PA R.C.P. 1920.33."[11] As stated above the 2018 Order included a similar sanction; however, the 2018 sanction included the following language: "**unless provided previous to this order in response to Defendant pursuant to Defendant's Request for Production of Documents or Defendant's Interrogatories (First Set)**.[12] (emphasis added).

On December 20, 2023, on the day this matter proceeded to a bench trial, due to the stark differences between the 2018 and 2022 Orders and due to the Court postponing all action in the matter due to the National Health Emergency, this Jurist vacated the 2022 Order.[13] After the bench trial was held, and after the parties filed their respective findings of facts and conclusions

---

[10] See the January 22, 2022, Order of the Court, signed by the late Judge Michael H. Sholley.
[11] See the January 22, 2022, Order of the Court, signed by the late Judge Michael H. Sholley.
[12] See the October 25, 2018, Order of the Court, signed by former Judge Michael T. Hudock.
[13] See the Transcript of Proceedings, December 20, 2023, at 5.

5

of law, this Court found liability for the Plaintiffs on the basis of *quantum meruit*.[14] Due to the parties not articulating the amount of damages owed, and the complexity of establishing the exact amount of damages owed under *quantum meruit*, this Court made a decision as to liability, and scheduled a separate hearing to establish damages.

Prior to the hearing on damages, the Appellant filed a Motion for Post-Trial Relief. The Court struck this Motion as premature, as the damages hearing had not yet taken place.[15] Before the damages hearing occurred, the Appellant filed a Notice of Appeal. The Appellant filed a Concise Statement of Matters Complained of on Appeal, addressing substantially similar issues to those currently before the Court, and the Court issued a 1925(a) Opinion on August 12, 2024. On October 23, 2024, the Superior Court of Pennsylvania quashed the Appellant's appeal as being premature, as the damages hearing had yet to occur.[16]

A hearing on damages occurred on February 10, 2025. On April 15, 2025, the Court issued its Findings of Fact and Conclusions of Law, which found that the Appellant was liable to the Plaintiffs in the amount of $12,230.00.[17] The Appellant filed a Motion for Post-Trial Relief, which the Court denied on May 29, 2025.[18]

On June 6, 2025, the Appellant filed a Notice of Appeal and a Petition for Leave to Proceed *In Forma Pauperis*. The Court conducted a hearing on the Appellant's Petition on June 23, 2025, and the Court denied said Petition.[19] The Appellant filed a Concise Statement of Matters Complained of on Appeal on July 17, 2025. The Court will address the issues raised by the Appellant below.

---

[14] See the May 8, 2024, Order of the Court.
[15] See the May 23, 2024, Order of the Court.
[16] See the Order of the Superior Court of Pennsylvania in *Rudinski, Orso & Lynch v. Hawk*, 861 MDA 2024, dated October 23, 2024.
[17] See the Court's Findings of Facts and Conclusions of Law, dated April 15, 2025.
[18] See the Order of the Court, dated May 29, 2025.
[19] See the Order of the Court, dated June 24, 2025.

## II. The Appellant Failed to Furnish the Filing Fees in the Lower Court.

The Court notes that as of the date the Court submits this Opinion, the Appellant has failed to pay the filing fee costs for this appeal. Pursuant to Pa. R. A. P. 905(c), "[t]he appellant upon filing the notice of appeal shall pay any fees therefor (including docketing fees in the appellate court) prescribed by Chapter 27." Pa. R. A. P. 905(c). This Court denied the Appellant's application to proceed *in forma pauperis* on June 23, 2025. The Appellant did not file an appeal to this Court's denial within thirty (30) days of that Order. In accordance with *First Union National Bank v. F.A. Realty Investors Corp.*, this appeal is not invalid for the failure to pay filing fees; however, the Superior Court does have the authority to dismiss this appeal for such a failure. 812 A.2d 719, 722-723 (Pa. Super. 2002).

## III. Appellate Issues

### a. The Appellant's first appellate issue is that the Court erred by determining that there were benefits conferred from the Plaintiffs' representation that were not the equitable distribution of marital property.

In the Appellant's first appellate issue, she claims the Court committed an abuse of discretion and an error at law by finding that the Plaintiffs could recover under unjust enrichment for legal services and benefits that attorney Lynch provided Appellant that were not the equitable distribution of marital property related to her divorce.

> The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Durst v. Milroy General Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. 2012) *quoting Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995). The central question when considering

7

the application of unjust enrichment "is whether the enrichment of the defendant is unjust." *Schenck*, 666 A.2d at 328. "Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or implied in law, which requires that the defendant pay to the plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in *quantum meruit.*" *Id.* at 328-329. "*Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." *Durst*, 52 A.3d at 360, *quoting Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 532 fn.8 (Pa. 2010).

"A client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making the performance of the contract impossible, the attorney is not deprived of his right to recover on *quantum meruit* a proper amount for the services which he has rendered." *Sundhiem v. Beaver County Bldge & Loan Ass'n*, 14 A.2d 349, 351 (Pa. Super. 1940).

The Court interprets the Appellant's first issue as asserting that, because the representation letter between the Plaintiffs and the Appellant was executed with the goal of achieving an equitable distribution of marital property, the Plaintiffs cannot recover fees for any legal work that did not accomplish that objective. However, the Appellant has not cited any case law supporting this proposition, and the Court found none. The Court also finds such a proposition would go against the purpose of a *quantum meruit* action. In a *quantum meruit* action, an attorney is compensated for the services completed prior to their termination by a client. *Angino & Rovner v. Jeffrey R. Lessin & Associates*, 131 A.3d 502, 508 (Pa. Super. 2016). The Appellant attempts to limit all recovery under *quantum meruit* to the ultimate disposition of an action; however, such ultimate disposition is made impossible by the client firing the attorney.

8

As the Superior Court stated in *Sundhiem*, the client has the right to terminate the attorney at any time, but if they do so, "thus making the performance of the contract impossible," the attorney can recover under *quantum meruit.* 14 A.2d 351. The proposition of the Appellant would make it impossible for an attorney working off a contingency case to ever have a right to recovery under *quantum meruit.* The Superior Court has already decided this issue in this case, by holding that the Plaintiffs could recover under *quantum meruit.*[20]

This Court rejected Appellant's claims that the legal services performed by the Plaintiffs were not in accordance with the goal of equitable distribution. The Court found based on the credible testimony of attorney Lynch that the Appellant called upon the Plaintiffs to help her in issues such as sustaining her and her children's health insurance through her former spouse, provided legal advice on the Appellant's personal and business taxes, provided legal advice about refinancing a property, negotiated with the Appellant's former spouse to allow her on their mutual business to continue with her employment, negotiated with the Appellant's former spouse to prevent the Appellant from being arrested, and negotiated with the Appellant's former spouse's attorney to agree to a framework of a marital settlement agreement. The Court believes that all of these issues stem from the divorce action and ultimately the equitable distribution between the Appellant and her former spouse. The Court found the Plaintiffs' legal services conferred a benefit to the Appellant. The Court finds that not compensating the Plaintiffs for their conferral of these benefits would be unjust.

For these reasons, the Court finds this Appellate issue without merit.

---

[20] See *Rudinski, Orso & Lynch v. Hawk*, 649 MDA 2019, at 8. See also *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102-1103 (Pa. 2018).

9

**b. The Appellant's second appellate issue is that the Court erred by allowing the Plaintiffs to recover under *quantum meruit* on an hourly rate when such hourly rate was not included in the fee agreement.**

The Appellant's second appellate issue is that the Court based the Plaintiffs' recovery in part on attorney Lynch's hourly rate at the time of the services, when such hourly rate was not contained within the representation letter. The Appellant attempts to make this argument under the law of the case doctrine. The Court finds that there was no dispute as to the fact that the representation letter between the Plaintiffs and the Appellant did not contain an hourly fee rate. This Court found multiplying attorney Lynch's testified hourly rate times the amount of hours worked on this matter was appropriate.

In *Mager v. Bultena*, the Superior Court found that in a *quantum meruit* action, the compensation is to be "based on the number of hours worked multiplied by a fair fee." 797 A.2d.948, 957 (Pa. Super. 2002). Judge Joyce paraphrased the majority's holding as follows: "when an attorney's representation is terminated, thereby breaching a contingency fee contract, the attorney's *quantum meruit* claim is to be computed by multiplying the hourly rate by the number of hours worked." *Id.* at 959) (Joyce, J. concurring).

In the current matter, the Appellant is correct that an hourly fee was not included in the representation letter between the Plaintiffs and the Appellant. However, attorney Lynch credibly testified that his fee at the time of his representation was $200.00 an hour.[21] The Appellant did not provide any testimony or evidence to show that this hourly rate was not fair, reasonable, or in line with other attorneys in the area at the time the work was performed. The *Mager* Court did not hold that in a *quantum meruit* action, an attorney could only recover based on their hourly fee rate if the fee rate was included in their fee agreement. Due to the nature of the *quantum meruit* action coming from a contingency fee agreement, this Court finds it reasonable that the hourly

---

[21] See the Transcript of Proceedings, February 10, 2025, at 21.

10

fee would not be included in the fee agreement. This Court determined that $200 an hour was a fair fee for the work performed by attorney Lynch. As the Appellant did not provide any testimony or evidence to the contrary, this Court used the $200.00 hourly rate in its calculations based on the credible testimony provided by attorney Lynch.

For these reasons, the Court finds this issue to be without merit.

### c. The Appellant's third appellate issue is that the Court erred by vacating the January 26, 2022, Order.

The Appellant's third appellate issue is that this Court erred in vacating the January 26, 2022, Order. This Court emphasizes for the record that it did not vacate the 2018 Order, but rather vacated the subsequent, inconsistent, and erroneous 2022 Order. The Appellant claims the Court vacating the 2022 Order was incongruent with the law of the case.

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter…The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the court of a single case; and (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Commonwealth v. Gacobano*, 65 A.3d 416, 419-420 (Pa. Super. 2013) (internal citations omitted) *quoting Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005). Departure from the law of the case principles "is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Commonwealth v. Starr*, 664 A.2d 1326, 1332 (Pa. Super. 1995).

11

The Appellant's appellate issue frames a law of the case issue which invokes the coordinate jurisdiction rule. The coordinate jurisdiction rule says "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Starr*, 664 A.2d at 1331. The coordinate jurisdiction rule applies when "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." *Id.* A judge can abandon the coordinate jurisdiction rule in "exceptional circumstances" including "where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. The Superior Court in *Starr* expanded the law of the case issues to include the coordinate jurisdiction rule. 664 A.2d at 1333.

Under both the law of the case doctrine and the coordinate jurisdiction rule, this Court found that the 2022 Order was clearly erroneous. Due to this, this Court vacated the 2022 Order prior to proceeding to the bench trial on liability.

The Court notes that at the time this Jurist was presiding over the bench trial in this matter, both of the Judges who made the Orders in 2018 and in 2022 were no longer coordinate with this Court as both Judges previously retired from the bench. The coordinate jurisdiction rule was established to "maintain the judicial economy and efficiency;" however, there is nothing to affect the judicial economy when a former judge's ruling is overturned by a now-sitting judge.

As stated above, the law of the case doctrine and the coordinate jurisdiction rule do not apply when, in exceptional circumstances, the prior holding was "clearly erroneous and would create a manifest injustice if followed." *Starr*, 664 A.2d at 1332. The Judge's Order on January 26, 2022, was clearly erroneous. The Judge was asked in the Motion in Limine to give an Order to enforce the 2018 Sanctions. The Order the Court issued in 2022 gave additional sanctions to the 2018

12

sanctions, and, therefore, was clearly erroneous. The differences between the two Orders are listed above, but in short they include: (1) a further limitation of evidence, to not include any documentation previously provided to the Appellant, (2) a limitation on any information the Plaintiffs may provide regarding other attorney's and the Appellant, (3) a restriction from the Plaintiff's testifying about any rate they would have charged for their work, and (4) a further limitation on any evidence or testimony the Plaintiff could present as to their efforts to obtain a settlement.[22] The 2022 Order specifically limited the scope of testimony and evidence the Plaintiffs could present at trial, and would have denied the Plaintiffs the opportunity to provide any substantial evidence included evidence that had been previously provided to the Appellant in discovery. The Plaintiffs' inability to provide any evidence on the work they performed for the Defendant would have prevented any meritorious claims from being heard at trial. Such a result would be excessive given the underlying sanction. Additionally, the 2022 Order imposes further sanctions on Plaintiffs for contemptuous conduct that was already addressed in the 2018 Order. Appellant's request for expanded sanctions must comply with the Rules of Civil Procedure governing contempt and sanctions, rather than being pursued through a furtive Motion In Limine accompanied by a proposed order that impermissibly expands this Court's prior ruling in the 2018 Order. As the Court's 2022 Order was clearly erroneous as it provided additional sanctions than the 2018 sanctions it was tasked to enforce, and would have created a manifest injustice if followed, the law of the case doctrine and the coordinate jurisdiction rule are overcome in this matter.

Further, if the Appellate Court finds the trial Court violated the law of the case doctrine and the coordinate jurisdiction rule by vacating the 2022 Order, then the 2022 Order must also be

---

[22] See the January 22, 2022, Order of the Court, signed by the late Judge Michael H. Sholley. See the October 25, 2018, Order of the Court, signed by former Judge Michael T. Hudock.

found to have violated the law of the case doctrine and the coordinate jurisdiction rule. The 2022 Order significantly changed the 2018 Order, an Order granted by former Judge Hudock, who was no longer on the bench at the time Judge Sholley imposed the 2022 Order. If the law of the case is so controlling, the only avenue available to this Court when this matter proceeded to trial in 2023 was to vacate the 2022 Order by Judge Sholley as a violation of the law of the case and the coordinate jurisdiction rule, and reinstate the 2018 Order by Judge Hudock. Thus, even if the Appellant's argument had merit, which was rejected by this Court, the appropriate remedy would still be to vacate the 2022 Order -- precisely the action this Court has already taken.

For all of these reasons, the Court finds this appellate issue is without merit.

### d. The Appellant's fourth appellate issue is that the Court erred by allowing the Plaintiffs to recover damages when the Appellant did not benefit from equitable distribution.

The Appellant's fourth appellate issue is that the Court erred in awarding the Plaintiffs damages when the Appellant did not receive a benefit from the Plaintiffs' representation in the form of equitable distribution, and the amount of damages was not based on the value of the services rendered.

As stated above under section (a), "*quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." *Durst*, 52 A.3d at 360, *quoting Am. & Foreign Ins. Co.* 2 A.3d at 532 fn.8. The Appellant again appears to claim the Plaintiffs cannot recover under *quantum meruit* as the Appellant did not receive the benefit of equitable distribution of her marital property. Appellant distorts the language of the legal representation letter to argue that it bars Appellee's quantum meruit claim, relying on the statement: "If we are unsuccessful on the equitable distribution claim, you will owe us no

14

additional fees."[23] But it was Appellant who fired Appellee, cutting off any chance of success on that claim. To now assert the language in the legal representation letter absolves Appellant of all payment is not only disingenuous—it is fundamentally unjust. The Appellant's claim would make it impossible for an attorney to recover under *quantum meruit* in any contingency case, as counsel would be terminated prior to the contingent. Additionally, the Pennsylvania Supreme Court has recognized an attorney's ability to recover under *quantum meruit* on a contingency case. *Meyer*, 179 A.3d at 1102-1103. Further, as stated above, the Superior Court has previously decided this issue and held that the Plaintiffs could recover under *quantum meruit*.[24]

After trial as to liability and a damages hearing, this Court found that the Plaintiffs' representation conferred a benefit to Appellant. These included; (1) legal advice about the divorce process, (2) legal advice about tax filings, (3) the filing of petition for the appointment of a master, (4) legal advice on refinancing property, (5) communicating with the bank about refinancing property on behalf of the Appellant, (6) legal advice on retaining health insurance while proceeding through the divorce process, (7) negotiating with opposing counsel to allow the Appellant to retain health insurance, (8) negotiating with the Appellant's ex-spouse and opposing counsel to come to the parameters of a marital settlement agreement, (9) negotiating with the Appellant's ex-spouse and opposing counsel to allow the Defendant to retrieve equipment from her and her ex-spouses business, and (10) defusing a volatile situation between the Appellant, her ex-spouse, and opposing counsel in which the Defendant was under threat of arrest. The Court finds that all of these services conferred a benefit onto the Appellant. As the Plaintiffs conferred a legal service which benefited the Appellant in the process of attempting to obtain equitable distribution, the Plaintiffs are entitled to recovery for the value of those services.

---

[23] See the legal representation letter dated March 18, 2015.
[24] See *Rudinski, Orso & Lynch v. Hawk*, 649 MDA 2019, at 8.

15

The Appellant argues in the alternative that if a benefit was conferred onto the Appellant, the amount the Court awarded the Plaintiffs in damages is incongruent with the value of the benefits conferred. The Court would refer to the analysis under section (b) of this Opinion. The Court took the hours that attorney Lynch testified that he worked on this matter and multiplied them by his fair hourly rate in accordance with *Mager*. 792 A.2d. at 957. The ultimate benefits conferred on the Appellant are immeasurable, as is often the case with many legal services. Through the work of the Plaintiffs, the Appellant had health insurance for herself and her children and was able to have financial gain from refinancing a home. The Plaintiffs aided in preventing the Appellant from being arrested and allowed her to get equipment to continue with her employment. These benefits are financial and mental, and the Court has no ability to determine their equitable amount other than through the hourly rate of an attorney multiplied by a fair hourly rate. *Id.*

For all of these reasons, the Court finds that this appellate issue is without merit.

**e. The Appellant's fifth and final appellate issue is that the Court erred by bifurcating the liability and damages hearings.**

The Appellant's final appellate issue is that the Court erred by failing to make a complete disposition on the case and bifurcating the liability and damages portion of the case.

In *Keegan Land Development Corp. v. Lagana*, the Superior Court determined a case in equity could have a subsequent damages hearing as long as there was no ability to present evidence allowing "another bite at the apple."[25] The Superior Court in *Keegan*, remanded the case for a separate damage hearing.[26] Similarly in the current matter, after the Appellant's second

---

[25] See *Keegan Land Development Corp. v. Lagana*, Docket No. 880 MDA 2018, Superior Court of Pennsylvania, 2019 WL3780892, at 6.
[26] See *Keegan Land Development Corp. v. Lagana*, Docket No. 880 MDA 2018, Superior Court of Pennsylvania, 2019 WL3780892, at 6.

16

appeal, the Superior Court remanded this matter for a damages hearing.[27] This Court's damages hearing was only to ascertain the damages the Appellant may be liable to and not as to liability itself. The damages hearing did not allow the Plaintiffs another bite at the apple. As the Superior Court remanded this matter and directed that a damages hearing occur, the ability for the trial court to bifurcate the matters in cases of equity and procedural complexity must be allowed.

The Court further notes that after this Court heard the liability portion of this matter, the Court needed to be able to further assess the damages in this case. This Court, upon review of the record, determined a damage hearing was necessary to avoid prejudice and to ensure fairness to both parties. This Court found that in preparation for trial and in reliance on the erroneous 2022 Order, the Plaintiffs were improperly precluded from bringing forth any information regarding hours worked or hourly rates for the Plaintiffs based on the 2022 Order. The 2022 Order states in paragraph 3, the "[p]laintiff is prohibited from asserting to the trier of fact that there was any fee agreement with the defendant except the $1,000.00 non-refundable fee which defendant paid and plaintiff is precluded form presenting hours expended by plaintiff on defendant's behalf, any hourly rates plaintiffs charged and any expenses or loss occasioned by plaintiffs."[28] Based on this Court's ruling at the initiation of the bench trial that properly vacated the 2022 Order, the Court found that bifurcating the matters of liability and damages would allow the matter to progress in an equitable manner. If the Court had not bifurcated liability and damages, the Plaintiffs would have been at a severe disadvantage, and would have allowed the Appellant a significant advantage based on the flawed and improper 2022 Order.

Further, the Court does not find that there is harm to the Appellant in the bifurcation. The Commonwealth Court has held that "[t]he mere demonstration of a potential procedural error,

---

[27] See the Order of the Superior Court of Pennsylvania in *Rudinski, Orso & Lynch v. Hawk*, 861 MDA 2024, dated October 23, 2024.

[28] See the January 22, 2022, Order of the Court, signed by the late Judge Michael H. Sholley, at ¶3.

17

without a showing of resulting harm or prejudice, is not a sufficient reason to overturn a lower tribunal's decision." *City of Philadelphia v. Shih Tai Pien*, 224 A.3d 71, 79 (Pa. Cmwlth. 2019). The Appellant has made no allegations of prejudice or harm against them in their concise statement of errors complained of on appeal. The Appellant, as well as the Plaintiffs, were given the ability to prepare and argue regarding damages at a separate hearing. Even if this Court was in error by bifurcating the liability and the damages portion of the trial, there was no damage or prejudice to the Appellant. For these reasons, the Court finds this appellate issue is without merit.

For all the foregoing reasons, the Defendant's appeal is without merit, and this Court's decision should be affirmed.

BY THE COURT:

_____
LORI R. HACKENBERG, P.J.

cc:   Jeff Orso, III, Esquire, Counsel for the Plaintiffs
(rm)   Plaintiffs
      Martin R. Wilson, Esquire, Counsel for Defendant
      Defendant
      Court Administration /rs
      Law Clerk

*LL exit 1st class mail*
*8-5-25*

18